THE GENESEE VALLEY CANAL RAILROAD COMPANY, RESPONDENT, v. JOHN SLAIGHT, APPELLANT.

*Statute of limitations, applicable to the State — what possession is not adverse to the State.*

In an action of ejectment it appeared that the land in question had been appropriated by the State for the purposes of the Genesee Valley canal, which was completed in 1841; that the canal was operated by the State until 1878; that, pursuant to chapter 326 of 1880, the right, title and interest of the State to the banks and prism of the canal, including the land in question, was conveyed to the plaintiff in November, 1880.

The defendant claimed title under a deed of partition, bearing date in 1842, by which the land was conveyed to one Giles, who conveyed it to the defendant in 1860. The referee found that the land in question "was, and for more than forty years prior to the commencement of this action had been, in the possession and occupation of the defendant, and his grantors claiming title under" such conveyances.

This action was commenced in 1882.

*Held,* that the provisions of the statute of limitations affecting the State differs from the statute of limitations applicable to actions of ejectment between individuals, in so far that it is not sufficient for the people to show a title which accrued to them more than forty years before the action was commenced, and that the defendant is in possession, but they must also make it appear that the land has been vacant within the prescribed period, or that within that period they have received the rents and profits of it; although, within the meaning of the statute, for the purpose of the remedy, it is held that the people are deemed to have received rents and profits from their unoccupied land.

That, although the doctrine of adverse possession is not applicable as against the people, because they are not subject to disseizin, the possession of a defendant, to render the statute effectual to bar a recovery, must be hostile, otherwise the people will be deemed to have received the rents and profits.

That, in this case, as the purpose for which the land in question was appropriated by the State, and the services required of the land in the construction and operation of the canal, were not impaired or interrupted by the occupation and use of it by the defendant, it followed that the inclosing and occupation of it by the defendant and his grantors, under claim or color of title, did not, by force of the statute, vest ⸀im any right to the land as against the State or the plaintiff, its grantee.

APPEAL from judgment against the defendant, entered in Livingston county on the report of a referee.

*Daggett & Norton,* for the appellant.

*Frank S. Smith,* for the respondent.

BRADLEY, J.:

The action is ejectment, brought to recover possession of a piece of land situated in the village of Mount Morris, county of Livingston. This land was appropriated by the State for the purpose of the Genesee Valley canal, which was completed in 1841, and the appraisal of damages made pursuant to the statute in 1843. The canal was operated by the State until in the fall of 1878, when it was abandoned pursuant to statute. (Laws of 1877, chap. 404, § 2.) And a sale of it was directed. (Id., § 3, amended by Laws of 1879, chap. 522, § 1.)

Then, pursuant to the provisions of chapter 326 of Laws of 1880, a sale and conveyance of the right, title and interest of the State in and to the banks and prism of the canal was made to the plaintiff in November, 1880. And the latter complied with the terms and conditions imposed by the act, except so far as it has been relieved

by further legislative enactments extending the time of perform-
ance by it in the respects therein mentioned.   In the act providing for
the sale to a railroad company the canal is divided into three sections,
so as to provide for the sale of that portion between the village of
Mount Morris and the village of Cuba, that between the village of
Mount Morris and the Erie canal in the city of Rochester, and that
between village of Cuba and the village of Millgrove or village of
Olean.   It is, therefore, contended that the portion of the canal
within the village of Mount Morris was not embraced in the pro-
visions of the statute giving the power to make the conveyance to
the plaintiff.   The evident purpose of the act was to provide, by
such authorized sale, so far as it would, for a railway substantially
along the line of the abandoned canal with a view to the provisions
of the means of travel and transportation, and that the opportunity
should be thus furnished to make it continuous between the extreme
termini.   And in view of the apparent legislative intent appearing
by the provisions of the act, and within its obvious purpose, the
construction adopted in the resolution of the commissioners of
the land office and in the letters-patent, making the grant to the
plaintiff of the canal land its entire length between those two
extreme points, was fairly warranted.

The State took the fee of the land appropriated for the canal.
The statute so provided.   (1 R. S., 226, § 52.)  And its abandon-
ment produced no reversion to the former owners (*Rexford* v.
*Knight*, 11 N. Y., 308.)   The further question is whether the
plaintiff's right of action was barred by the statute of limitations.
It appears that, by deed of partition of date February, 1842, land,
including that in question, was conveyed to one Giles, who conveyed
the same land to the defendant by deed of date April, 1860.   The
referee found that the land in question "was and for more than
forty years prior to the commencement of this action has been in
the possession and occupancy of the defendant and his grantors
claiming title under" such conveyances.   This action was commenced
in October, 1882.   From and after the year 1830 to 1849 the
statute provided that, "the people of the State will not sue or
implead any person for, or in respect to, any lands — or for the
issues or profits thereof by reason of any right or title of the said
people to the same, unless:   First. Such right or title shall have

accrued within twenty years before any suit or other proceeding for the same shall be commenced; or, unless: Second. The said people, or those from whom they claim, shall have received the rents and profits of such real estate, or some part thereof, within the said space of twenty years. (1 R. S., part 3, chap. 4, tit. 2, § 1.) And the same provisions were applicable to an action brought by any person claiming under letters patent or grant from the people of the State. (Id., § 3.) By the provisions of the Code of Procedure, as amended in 1849, the period of limitation was extended to forty years. (Sec. 75.) But it was also there provided that the title containing that provision should not extend to cases where the right of action had already accrued, but that the statutes then in force should be applicable to such cases. (Id., § 73.) The limitation of forty years is carried into chapter 4 (§ 362) of the Code of Civil Procedure, the 414th section of which provides that the provisions of that chapter are not applicable to a cause of action which accrued before the 1st day of July, 1848, and that the statutes then in force govern in that respect. So it would seem that if the case came within the statute of limitations and the cause of action accrued prior to 1848, only twenty years would be required to bar the action. (*Fairbanks* v. *Wood,* 17 Wend. 330; *Millard* v. *Whitaker,* 5 Hill., 408; *Champlain, etc., R. R. Co.* v. *Valentine,* 19 Barb., 484, 488.)

But this question is not important in view of the finding, before mentioned, of the referee. By the statute the people have agreed that they will not bring suit for the purpose in question unless their right or title referred to, shall have accrued within the term specified, or unless they shall have received rents and profits of the real estate within such time. This differs from the statute on the subject of limitations, applicable to actions of ejectment between individuals, in so far that it is not sufficient for the people to show a title which accrued to them more than forty years before their action is commenced, and that the defendant is in possession, but they must also make it appear that the land has been vacant within the prescribed period, or that within that time they have received rents and profits of it. (*Wendell* v. *People,* 8 Wend., 183; *People* v. *Denison,* 17 id., 312; *People* v. *Rector, etc., of Trinity Church,* 22 N. Y., 44.) And although the doctrine of adverse possession is not applicable as against the people because they are not subject to disseizin, the

possession of a defendant to render the statute effectual to bar a recovery, must be hostile, otherwise the people may be deemed to have received rents and profits. And within the meaning of the statute for the purpose of the remedy, it is held that the people are deemed to have received rents and profits of their unoccupied lands. (*People* v. *Arnold*, 4 N. Y., 508.) The possession and its character, as found by the referee, and the additional finding that the premises in question do not appear to have been at any time actually used or occupied by the State since the construction of the canal, seem, abstractly considered, to present some difficulty in the way of the recovery by the plaintiff as those findings assert all the elements *prima facie* requisite to render effectual the statute of limitations. There was some evidence given upon the trial to the effect that the land in question constituted the bank and was necessary for the support and maintenance of the canal during the time it was operated by the State. There is no finding upon that subject expressed by the referee, but in view of his conclusions of fact, as a whole, the finding last mentioned will not be construed as inconsistent with such evidence so as to deny its support, so far as it may, to the determination of the referee. (*Oberlander* v. *Spiess*, 45 N. Y., 175; *Armstrong* v. *Du Bois*, 90 id., 95.) There is, however, no finding on the subject of the receipt of rents and profits by the State. And it may be observed that the term " canal," as treated in its application to each of the several canals in this State, embraces all the land within the blue lines, as well the banks as the prism. The premises in question, upwards of thirty feet in width of the bank of the canal, being within the blue lines, was part of it. The State received rents and profits from the canal during the time of its operation. And for the purposes of the application of the effect of it upon the remedy, and to defeat the operation of the statute of limitations, it is difficult to see how any one portion of the canal, which embraced entire its banks and prism, could be distinguishable from any other part of it. In that view the question of adverse possession by the defendant, and those under whom he claims, becomes unimportant. The right derived from the statute of limitations does not, as against the people, rest upon the doctrine of adverse possession as such, although it may be requisite to support it. (*People* v. *The Mayor*, etc., 28 Barb., 240, 253; *Burbank* v.

_Fay_, 65 N. Y., 57.) The purpose for which the land in question was appropriated by the State, and the service required of it in the construction and operation of the canal, were not impaired or interrupted by the occupation and use of it by the defendant.

If the view here taken is correct, that the strip of land in question was included in the property of the State, known as the Genesee Valley canal, of which the State received rents and profits, it follows that the inclosing and occupation of it by the defendant and his grantors, under claim or color of title, did not, by force of the statute, vest in him any right to the land, as against the people of the State or the plaintiff, their grantee, and the judgment should be affirmed.

BARKER, P. J., HAIGHT and DWIGHT, JJ., concurred.

Judgment affirmed.