WILLIAM A. SWEET, APPELLANT, *v.* THE CITY OF SYRACUSE AND OTHERS, RESPONDENTS.

*When the subject of a local bill is sufficiently expressed in its title — the provisions of the Constitution limiting the term of water bonds to twenty years apply only to cities of over one hundred thousand inhabitants — what is a local bill appropriating public property to local purposes and requiring a two-thirds vote of the legislature.*

The title of chapter 291 of the Laws of 1889, entitled " An act to establish and maintain a water department in and for the city of Syracuse," sufficiently expresses the purpose of said bill, which was to furnish said city with water, and does not violate the provisions of the State Constitution (art. 3, § 16) requiring the subject of a local or private bill to be expressed in its title.

The provisions of the Constitution (art. 8, § 11), declaring that the term of bonds issued by a city for a supply of water shall not exceed twenty years, and requiring the creation of a sinking fund for their redemption, apply only to a. city of over one hundred thousand inhabitants.

In 1843 the canal board, which was duly authorized so to do, adopted a resolution "that the waters of Skaneateles lake, and the outlet of the same, be and they are hereby appropriated to the use of the public for a reservoir and feeder to the Erie canal." A dam was built by the canal board, which assumed control of the flow of the lake, the bed of which, so far as appeared, belonged to the State. The waters not necessary to the canal supply were conducted off beneath the canal and were thereafter allowed to flow in their natural channel.

In an action brought by a taxpayer to test the validity of chapter 291, Laws of 1889, as amended in section 18 thereof by chapter 314, Laws of 1890, granting, upon conditions therein stated, to the city of Syracuse the right to use the surplus waters of said lake:

*Held*, that the action of the canal board was an absolute and permanent appropriation by the State to its use of all the waters of said lake.

That said section 18, as amended by the act of 1890, was an act in impairment of the previous complete ownership of the State in said waters.

That said act of 1890 was, therefore, a bill appropriating public property for local purposes, and, not having received the assent of two-thirds of each branch of the legislature, required in such case by article 1 of section 9 of the Constitution, it was void and said section 18 as amended was consequently invalid.

APPEAL by the plaintiff William A. Sweet upon a case and exceptions from a judgment, entered in the clerk's office of Onondaga county on the 10th day of December, 1890, in favor of the defendants, after a trial by the court at the Onondaga Special Term.

Action by the plaintiff, as a resident and taxpayer of the city of Syracuse, to have declared unconstitutional, inoperative and void chapter 291 of the Laws of 1889, entitled "An act to establish and maintain a water department in and for the city of Syracuse," and also chapter 314 of the Laws of 1890, which amended section 18 of the act of 1889; and to restrain the defendants from doing any act in furtherance or consummation of the scheme or plan of those acts.

By the act of 1889 the mayor of the city of Syracuse was directed to appoint a board of water commissioners to be known as the "Syracuse Water Board." This board was authorized and directed "for and in the name of the city of Syracuse, to acquire, construct, maintain, control and operate a system of water-works to furnish the city of Syracuse and its inhabitants with water from Skaneateles lake." It was authorized also to purchase and acquire by deed or otherwise all

lands, waters or other property "necessary for the acquisition, construction, maintenance, control and operation of said water-works," and to acquire the rights and property of any existing corporation or company organized to supply the city of Syracuse and its inhabitants with water and to maintain and operate the same, the title of all property acquired to vest in the city. The power to exercise the right of eminent domain was conferred, and the manner of its exercise provided for. Section 18 of the act was as follows :

" § 18. The Syracuse water-board, by and with the consent of the canal board, is hereby authorized and empowered to appropriate so much of the waters of Skaneateles lake as may be necessary to supply the city of Syracuse and its inhabitants with water ; upon the express condition, however, that the city of Syracuse shall, when so required by the canal board, furnish from such source or sources, and in such manner as the canal board may designate, as much water for the use of the Erie canal as shall be taken by the city from Skaneateles lake, and the power granted in this act shall be deemed to include authority and power to provide such compensating water supply for the Erie canal, and to do and perform all those acts and things which shall be needful to acquire for said city and its inhabitants the waters of Skaneateles lake."

Provision was made for the issuing by the city, whenever the board considered it necessary, of bonds to an amount not exceeding in the aggregate the sum of $3,000,000, all payable on July 1, 1920, bearing interest semi-annually ; the proceeds of these bonds to be used by the board " solely for the acquisition and construction of the system of water-works herein provided for, and for the purpose of acquiring property, rights, privileges and franchises therefor, or to be used in connection therewith, and for providing a compensating water supply for the Erie canal as specified in section eighteen of this act." No sinking fund was provided for.

The consent of the canal board, called for by section 18, was not given, and thereupon the act of 1890 was passed, which amended section 18 so as to read as follows :

" § 18. The Syracuse water-board is hereby authorized, under the restrictions and conditions hereinafter mentioned, to take and conduct water, not required for the Erie canal, from Skaneateles lake to said city, through a pipe or main not exceeding thirty inches

in diameter, for the purpose of supplying said city and its inhabitants with water. Before any water shall be so taken, however, the water board shall, at the cost and expense of said city, increase the storage capacity of said lake sufficiently to store therein all the ordinary flow of its water-shed; the fact of such necessary reconstruction having been made shall be certified by the state engineer and surveyor and superintendent of public works and filed in the office of superintendent of public works. All the work authorized by this section, including the placing and maintenance of said pipe, shall be executed under the direction, supervision and control of the superintendent of public works, and in accordance with the plans and specifications therefor to be prepared or approved by the state engineer and surveyor. The dam and all structures connected therewith, together with the regulation at all times of the flow of water from said lake into the aforesaid pipe, shall be and continue in the exclusive charge and control of the superintendent of public works, and shall be maintained and kept in repair by or under the direction of said superintendent at the cost and expense of the city of Syracuse. This section shall be construed to vest in the state engineer and surveyor the power to prescribe the plan of construction and location of the gate-house or other means for delivering the water of said lake into said pipe; and if for any reason the flow of water into said pipe shall prevent the State from having a sufficient quantity for all the uses of the Erie canal, the said superintendent of public works is authorized and required to stop the flow of water into said pipe, in whole or in part, so far as may be necessary in his judgment to secure such sufficient quantity; it being understood that the rights of the city of Syracuse hereby conferred in, and to such surplus waters, are to be subject always to the superior claims of the State thereto. Before any water shall be taken from Skaneateles lake, under the provisions of this act, the city of Syracuse shall acquire or extinguish all water-power rights upon the outlet of said lake to be affected by the proposed storage of water. The city of Syracuse shall at all times protect and save harmless the State of New York from and against all claims and demands of riparian owners upon said lake and outlet for loss or damage occasioned by any act or structure authorized hereby. The powers granted to the Syracuse water board to acquire property under this act, and to

make payment therefor, shall be deemed to include full power and authority to do and perform all acts and things necessary or proper to enable said city to acquire, store and obtain water from Skaneateles lake in accordance with the provisions of this section."

Neither of the acts received the assent of two-thirds of the members elected to each branch of the legislature.

It was claimed by the plaintiff in his complaint, and at the trial, that the Skaneateles lake and outlet were a reservoir and feeder of the Erie canal and a part thereof, and that the acts above referred to, in assuming to grant to the city of Syracuse the waters of said lake and outlet, were in violation of the provision of the Constitution which forbade the sale, lease or disposition of the Erie canal; that said acts were also in violation of that provision of the Constitution that forbade any appropriation of the public moneys or property for local or private purposes without the assent of two-thirds of the members elected to each branch of the legislature; that the provision for issuing bonds was unconstitutional as the term of payment exceeded twenty years and no sinking fund was provided; that the title of the acts was insufficient on the ground that the subject was not adequately expressed. As to all of these propositions the court ruled against the plaintiff and an exception was duly taken.

The plaintiff also claimed, and there was evidence on the subject, that the plan of obtaining water from Skaneateles lake was inadequate, improvident and wasteful.

*Charles H. Peck* and *George F. Comstock*, for the appellant.

*C. L. Stone*, *W. A. Beach* and *W. P. Gannon*, for the respondents.

MERWIN, J.:

The plaintiff in this case seeks a remedy under the provisions of section 1925 of the Code of Civil Procedure, as supplemented by chapter 531 of the Laws of 1881 and chapter 673 of the Laws of 1887. Under these statutes it was held by the Court of Appeals, in *Talcott* v. *City of Buffalo* (26 N. E. Rep., 263; 34 N. Y. St. Rep., 871), that the remedy was confined to cases where the acts complained of are without power, or where corruption, fraud, or bad faith amounting to fraud, is charged, it being said that the terms

" waste " and " injury " used in the statute, " comprehended only illegal, wrongful or dishonest official acts, and were not intended to subject the official action of boards, officers or municipal bodies acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of the judicial tribunal."

Upon this basis, the questions in this case are :

1. Whether the act of 1889 is unconstitutional, by reason of its title, as in violation of section 16, article 3 of the Constitution, which provides that no local or private bill shall embrace more than one subject, and that shall be expressed in the title.

2. Whether the provisions in the act of 1889 for the issuing of bonds are invalid, under section 11 of article 8 of the Constitution of this State, by reason of the term of the bonds exceeding twenty years and the absence of any provision for a sinking fund.

3. Whether section 18 of the act, as amended in 1890, is in violation of section 6 of article 7 of the Constitution which provides that the legislature shall not sell, lease or otherwise dispose of the Erie canal, or is in violation of section 9 of article 1 of the Constitution, which provides for the assent of two-thirds of each branch of the legislature to every bill appropriating the public moneys or property for local or private purposes.

1. The title of the act of 1889 is " An act to establish and maintain a water department in and for the city of Syracuse." The claim is that this does not adequately express the subject of the act, which is to supply the city of Syracuse with water.

In *People ex rel. City of Rochester* v. *Briggs* (50 N. Y., 554) it was held that the title, " An act to amend the several acts in relation to the city of Rochester," expressed a subject broad enough to embrace all the details of the charter and government of the city of Rochester. In *Astor* v. *Arcade Railroad Company* (113 N. Y., 93, 110) it is said : " When the subject is expressed, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. The title must be such, at least, as fairly to suggest or give a clue to the subject dealt with in the act, and

unless it comes up to this standard it falls below the constitutional requirement." In Cooley on Constitutional Limitations (172; 5th ed., 174) it is said : " The generality of a title is, therefore, no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary and proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it."

Within these rules, the title in question was sufficient. A water department, as that expression is ordinarily understood to mean, could not be established and maintained without a supply of water. The obtaining of such supply would, therefore, be within the scope of the subject as expressed in the title.

2. Section 11 of article 8 of the Constitution is as follows:

" Sec. 11. No county, city, town or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation ; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes. This section shall not prevent such county, city, town or village from making such provision for the aid or support of its poor as may be authorized by law. No county containing a city of over one hundred thousand inhabitants, or any such city, shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appeared by the assessment-rolls of said county or city on the last assessment for State or county taxes prior to the incurring of such indebtedness ; and all indebtedness in excess of such limitation, except such as may now exist, shall be absolutely void except as herein otherwise provided. No such county or such city, whose present indebtedness exceeds ten per centum of the assessed valuation of its real estate subject to taxation, shall be allowed to become indebted in any further amount until such indebtedness shall be reduced within such limit. This section shall not be construed to prevent the issuing of certificates

of indebtedness or revenue bonds issued in anticipation of the collection of taxes for amounts actually contained, or to be contained, in the taxes for the year when such certificates or revenue bonds are issued and payable out of such taxes. Nor shall this section be construed to prevent the issue of bonds to provide for the supply of water, but the term of the bonds issued to provide for the supply of water shall not exceed twenty years; and a sinking fund shall be created, on the issuing of the said bonds for their redemption, by raising annually a sum which will produce an amount equal to the sum of the principal and interest of said bonds at their maturity. The amount hereafter to be raised by tax for county or city purposes, in any county containing a city of over one hundred thousand inhabitants, or any such city of this State, in addition to providing for the principal and interest of existing debts, shall not in the aggregate exceed in any one year two per centum of the assessed valuation of the real and personal estate of such county or city, to be ascertained as prescribed in this section in respect to county or city debt."

The claim of the defendants is that the provision as to bonds issued to provide for the supply of water, applies only to cities containing over one hundred thousand inhabitants. The claim of the plaintiff is that the provision is general and applies to all cities. It is conceded that the city of Syracuse has less than one hundred thousand inhabitants.

Section 11, as it now stands, was adopted in November, 1884. It was made up of section 11, as it existed prior to that date, adding thereto the provisions commencing with the words, "No county containing a city of over one hundred thousand inhabitants, or any such city," etc., to the end of the section. So that, prior to 1884, no county, city, town or village could give any money or property, or loan its money or credit, to or in aid of any individual or corporation, or incur any indebtedness except for county, city, town or village purposes. An exception was made in favor of the poor, apparently upon the idea that the general inhibition of gifts of money or property to or in aid of any one would, unless qualified, include the poor. Under the section as it then stood, as applicable to all cities, there was unlimited power in the legislature to authorize them to incur indebtedness, except only it must be for city purposes.

The amendatory clauses of 1884 restricted this general legislative power by providing that no city of over one hundred thousand inhabitants should be allowed to incur indebtedness for any purpose beyond a certain limit. Then came the provisions: "This section shall not be construed to prevent the issuing of certificates" in certain cases; "nor shall this section be construed to prevent the issue of bonds to provide for the supply of water," etc. These limitations of construction both had reference to some limitation of power, and the only limitation on the subject was that having reference only to the large cities. The power as to the smaller cities remained unlimited. There was no occasion to enlarge it. It is conceded that the furnishing of a water supply is for city purposes.

It would seem, therefore, that the provision as to water-bonds had reference only to those large cities whose right to incur debts was limited. They were the only ones to be benefited by the reservation or privilege, and the burden is no more extensive than the benefit conferred. In fact, it is quite apparent that all the amendatory clauses had reference only to the described class of cities.

But it is said that there is no more reason for limiting the term and providing a sinking fund in case of bonds of large cities than of smaller ones. That may be so. And so it may be said with as much reason that smaller cities should be limited in the amount of their indebtedness to the same extent as larger ones. It is not done, however. And the same reason that would allow this to so remain, would allow the power as to water bonds to be unlimited. The question for us is, what is the fair construction of the section, having in view the circumstances of its adoption. We, therefore, conclude that the limitation as to water bonds does not apply to the present case.

3. Does section 18 of the act, as amended in 1890, appropriate the public property for local or private purposes? It is conceded that the law did not have the two-thirds assent required by the Constitution, and it was a local act. (*People* v. *O'Brien*, 38 N. Y., 194.) This is not disputed. Was there an appropriation of public property?

The city, through its water board, was authorized to take and conduct, from Skaneateles lake, water, not required for the Erie canal, through a pipe not exceeding thirty inches in diameter. Before doing this, however, the city must increase the storage

capacity of the lake sufficient to store therein all the ordinary flow of its water-shed, and must acquire or extinguish all water-power rights upon the outlet of the lake to be affected by such storage. The work authorized by the section must be done under the direction and control of the Superintendent of Public Works, and in accordance with plans and specifications prepared or approved by the State Engineer, and the dam and all structures connected therewith, and the regulation of the flow of water from the lake into the pipe must continue in the exclusive charge and control of such superintendent, and shall, by or under his direction, be maintained and kept in repair at the expense of the city. If for any reason the flow of water into the pipe should prevent the State from having a sufficient quantity for all the uses of the Erie canal, the superintendent was authorized and required to stop such flow in whole or in part, so far as might be necessary in his judgment to secure such sufficient quantity, "it being understood that the rights of the city of Syracuse hereby conferred, in and to such surplus waters, are to be subject always to the superior claims of the State thereto." The board was given full power to do and perform all acts and things necessary or proper to enable the city to acquire, store and obtain water from the lake in accordance with the provisions of the section. In substance, the city was given the surplus waters as such surplus might be determined by the State officers, without reference to whether such surplus was greater or less than the additional storage to be furnished at its expense.

The expression " superior claims," used in the clause above quoted, had reference only to the claims of the State of water for the use of the canal, evidently contemplating that there was and would be a surplus which would be obtained by the city. The city was also given the right or privilege of using the lake as a means of storage of its additional waters, any right to or in which, of any riparian owner upon the lake or outlet it was bound to extinguish.

Skaneateles lake, as the case shows, is a body of water about fifteen miles long, with a general width of about one mile, having a surface area of about thirteen square miles. It is located about seventeen miles from Syracuse, and is about four hundred and fifty-three feet above the level of the Erie canal at the Jordan level. It has a water-shed, including the surface of the lake, of seventy-three and one-

quarter square miles and discharges its water through an outlet, known as Skaneateles creek, northerly into the Seneca river, distant between ten and eleven miles. The lake has been for many years navigated by steamboats and other craft, but there is no navigable communication between it and any other waters.

There is no direct evidence as to the ownership of the bed of the lake. It was conceded at the trial, and is found, that the patents issued by the State for the lands surrounding the lake, designate by lot numbers the lands conveyed, and do not describe the same by metes and bounds; and that the original surveyor's field notes of the lots show the shore lines of the lake as bounding lines thereof. Assuming, as we probably may, that the State was the original owner of the whole, its patents carried the title to low-water-mark, according to the rule laid down in *Wheeler* v. *Spinola* (54 N. Y., 377). That would leave the State the owner of the bed below low-water-mark.

The State, from the first construction of the Erie canal, had used a portion of the waters of the lake to supply the canal. Prior to 1843 a further supply was found to be necessary, and, therefore, on the 29th of June, 1843, the canal board of the State, as they were authorized by law to do, adopted a resolution : " That the waters of Skaneateles lake, and the outlet of the same, be and they are hereby appropriated to the use of the public for a reservoir and feeder to the Erie canal," and the Canal Commissioners were directed to make the improvements necessary to carry the resolution into effect. From the map of the appropriation it appears that at the foot of the lake lands were taken which included the dam and water rights at that point. No question is made, as I understand the case, about the legality of the appropriation as made by the resolution of the Canal Board. The point is as to the extent or effect of such appropriation. From that time the State maintained a dam at the foot of the lake, and now the flow of water from the lake at that point is regulated by a dam nine feet high, containing gates through which the water is permitted to flow into the outlet, and these gates, since 1843, have been under the management of an employee of the State. About nine miles below the foot of the lake, at the village of Jordan, a dam has been constructed across the outlet, by means of which a portion of the flow from the lake is discharged into the

canal. An aqueduct constructed under the canal permits the flow of that part of the stream not used for canal purposes beneath the canal and on to the Seneca river through its natural channel. Upon the outlet and between the lake and the canal are situated numerous mills deriving their power from the use of the waters of the outlet, and these are the powers referred to in the act of 1890. During the time, in every year, when the canals are closed a volume of water has been permitted to flow through the gates of the dam at the foot of the lake for the use of mills along the outlet, except for several periods in different years when the water was held back either for purposes of repair or to increase the storage in the lake. The quantity of water thus ordinarily permitted to flow during the closed season of navigation amounts, as the court below found, approximately to about fifty million gallons per day. This water has never been utilized by the State for canal purposes. The carrying capacity of the thirty-inch pipe authorized to be laid is found to be 15,000,000 gallons per day, and the drawing of that amount per day would be equivalent in one month to two inches in depth from the surface of the lake.

These are the main facts upon the subject. The theory of the defendants is that by the appropriation of 1843 the State only acquired the right to so much water as might be required for the uses of the canal, that the balance belongs to the riparian owners and that, therefore, the statute in question did not give to the city any property of the State. The theory of the plaintiff is that the appropriation in 1843 was a permanent one and passed the fee to the State, and the act, which gave the city an interest in it, appropriated to that extent public property to the use of the city.

The appropriation of 1843 was, in form, permanent and absolute. In this respect it differs from the case of *Silsby Manufacturing Company* v. *State* (104 N. Y., 562), where the State possessed only the rights of the Seneca Lock Navigation Company, and those were expressly limited to the use of only so much as was necessary for the purposes of navigation, and upon that ground a liability for waste was held to exist against the State.

There is no doubt that, in fact, this was a permanent appropriation, and in such a case, as said in *Heacock & Berry* v. *State of New York* (105 N. Y., 248), under the Revised Statutes then in

force (1 R. S. [§§ 46, 48], pt. 1, chap. 9, tit. 9 [4th ed.], 484), it was provided that the State should take a fee, and unless the land-owner applied for compensation within one year his right should be deemed extinguished. (See, also, *Mark* v. *State*, 97 N. Y., 572.) In such a case, if the use for the purposes of a canal was abandoned the property would not revert. (*Rexford* v. *Knight*, 11 N. Y., 308 ; *Genesee Valley Canal R. R. Co.* v. *Slaight*, 49 Hun, 37 ; Cooley on Const. Lim. [6th ed.], 688.)

If the statute authorized the entire ownership to be taken, and the appropriation followed the statute, the fact that all might not be needed for the use of the canal would not reduce the extent of the right taken. In *Sweet* v. *Buffalo, New York and Philadelphia Railway Company* (79 N. Y., 293) it was held that a fee may be taken, although the public use for which the land is to be taken is special, and not of necessity permanent or perpetual, and that when a statute authorizes the taking of a fee it cannot be held invalid, or that an easement only was acquired thereunder, on the ground that an easement only was required to accomplish the purpose in view.

It is also to be borne in mind that in 1843 there was a statute (R. S., pt. 1, chap. 9, tit. 9 [§ 75 *et seq.*], 4th ed., p. 492) providing for the sale of surplus waters, thus indicating that the appropria-tions of that character were not simply of so much as was necessary for the uses of the canals.

It seems to me, therefore, that we must assume that the appro-priation of 1843 was not simply of what was required for the Erie canal, but was just as broad as the resolution of the canal board made it, " the waters of Skaneateles lake, and the outlet of the same." It would then follow that when the act of 1890 assumed to give to the city of Syracuse the right to take waters " not required for the canal," it would, if operative, give to the city the benefit of a portion of the title of the State ; in other words, appropriate public property.

Under the appropriation, as made by the Canal Board, the State was entitled to take and have delivered, through the outlet to the point where the State dam at the foot of the outlet is erected, all the flow from Skaneateles lake. The State, at its dam at the foot of the outlet, could either turn the water into the canal or into the Seneca river, or, under the law as it then stood, sell the surplus.

Suppose, as claimed by the defendants, that the riparian owners along the outlet had a right to use the water as it passed along, that would not give them any right to divert it and prevent its delivery at the foot of the outlet; and the city, as their grantee, would obtain no such right. No one but the State could give the right to divert. In doing so it would part with a right to property.

There is another feature of the case which is of some importance on this question. The State, by its appropriation in 1843, and subsequent improvements, became the possessor and owner of a complete reservoir. The act of 1890 gives to the city of Syracuse the right in perpetuity to use this reservoir for the purpose of storage of surplus waters for its benefit. There is thus constituted a kind of dual ownership which, to say the least, is an impairment of the previous complete ownership of the State. The impairment of rights is the taking of property. (*Ex parte Jennings*, 6 Cow., 525.)

I am not prepared to say that the act of 1890 can be construed to be within that provision of the Constitution which says that the legislature "shall not sell, lease or otherwise dispose of the Erie canal." In the previous Constitution the provision was that "the legislature shall never sell or dispose of the said navigable communications, or any part or section thereof." It is true that by the statute in force in 1846 (1 R. S., pt. 1, chap. 9, tit. 9, art. 1, § 1 [4th ed., p. 470]) "the navigable communication connecting the waters of lake Erie with those of the Hudson river, and all the side-cuts, feeders and other works belonging to the State connected therewith (were known and designated) by the name of the Erie canal." This would include very likely the Skaneateles reservoir and feeder. Still, the act of 1890 made the rights of the city of Syracuse subservient to the uses of the Erie canal. It aims to take surplus waters which, though they may belong to the State, would hardly be considered a part of the Erie canal. True it is, too, that certain rights in the reservoir are conferred, but the paramount control for the benefit of the canal is retained. In the future management there might arise opportunity for friction and embarrassment in regard to conflicting claims or wants of the respective parties. Still there is some force in the suggestion that the inhibition upon a sale, lease or disposal of the canal, apparently as an entirety, does not reach the present case.

Be that as it may, I see no way to escape the conclusion that the act of 1890 assumes to appropriate public property to a local purpose, and is, therefore, invalid by reason of the absence of the requisite two-thirds assent of the legislature. Upon this ground the judgment should be modified by inserting a provision, in effect, declaring the invalidity of section 18 of the act of 1889, as amended by the act of 1890, and striking out the award·of costs to the defendants. The appellant should have the costs of the appeal.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment accordingly.