WINNEBAGO PAPER MILLS, Appellant, vs. KIMBERLY-CLARK COMPANY, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*February 19—March 9, 1909.*

*Waters: Conveyance of water-power dam, canals, etc.: Title to lock: Easement or fee?*

1. Pursuant to an act of the legislature in 1847, a dam was constructed across the south channel of Fox river, with a canal and a lock for the passage of boats. In 1862 the federal government built a canal on the other side of the river, and the lock thereafter fell into disuse. In 1867 the owners conveyed the dam, together with an easement over the lands occupied by its ends for the purpose of maintaining it; also all their right, title, and interest in and to the water held and water power created by the dam, and the land occupied by the canal and race used for carrying water from said dam to the mills in the village, to the width of 100 feet each, as specified in the plat. It appeared, among other things, that the statute authorizing the dam required the construction and operation of the lock as a component part of the improvement; that the lock, though disused, was maintained until after the conveyance; that its maintenance or the construction of a new one by the owner of the water power could probably be compelled; that the lock was only thirty-five feet wide while the width of the canal and race was correctly stated in the conveyance as 100 feet; that the lock was located upon an arm of the canal and was not itself used to convey water to mills, but the portion of such arm above the headgates had been so used; and that without the use or

control of the lock the power conveyed might be largely impaired. *Held*, that the lock constituted a part of the canal and was included in a conveyance thereof, though not specifically mentioned.

2. The rights of the parties under such conveyance are to be determined as of the date thereof, and the subsequent filling up of the canal or lock could not operate to divest the title acquired.

3. A conveyance of a dam and mill races or canals and the water power furnished by the dam, reciting that it was intended thereby to convey the entire interest of the grantor in all said property, carried the grantor's title to the fee of the bed and banks of the canals, including a lock, and not a mere easement to use the same for water-power purposes; and upon discontinuance of the use of the lock it did not revert to the grantor.

APPEALS from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on that of the defendant.*

This is an action of ejectment brought to recover possession of a parcel of land formerly used as a lock for the passage of boats from a point above the dam in the Fox river at Neenah to Little Lake Butte des Morts. The lock in question fell into disuse after the year 1862, when the government of the United States constructed a channel for the passage of boats on the Menasha side of the river. The lock was gradually filled up from 1884 to 1890. Other material facts are stated in the opinion. The circuit court held that the plaintiff was entitled to a one-third interest and the defendant to a two-thirds interest in the strip of land in question. Both parties appealed from the judgment.

For the plaintiff there was a brief by *Eaton & Eaton,* attorneys, and *Barbers & Beglinger,* of counsel, and oral argument by *Fred Beglinger* and *M. H. Eaton.*

For the defendant there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.*

BARNES, J. This being an action of ejectment the plaintiff must prevail, if at all, on the strength of its own title, not

upon the weakness of that of its adversary. The plaintiff claims title. So does the defendant. Both claim through a common grantor. Defendant also asserts that, if the title is not vested in it, it is vested in a third party not before the court. It is not material for the decision of this case where the title is, provided it is not in the plaintiff.

On March 14, 1870, James Bassett and Abigail Bassett executed a quitclaim deed of the lock in dispute to Hungerford and Daniels, through whom the plaintiff claims by mesne conveyances. It is the contention of the plaintiff that at the time this deed was executed the Bassetts owned a two-thirds interest in the lock. On September 18, 1867, the same grantors executed a conveyance to Smith and Proctor, conveying the following described property:

"The dam across the south channel of the Fox river at the village of Neenah in said county, commonly known as the 'Neenah dam,' erected and maintained pursuant to the provisions of an act of the legislature of Wisconsin entitled 'An act to authorize the construction of a dam across the Fox river,' approved February 8, 1847, with the right, privilege and easement of the land occupied by the ends of said dam on each side of said channel for the uses and purposes of keeping and maintaining the said dam, also all the right, title and interest of the said parties of the first part in and to the water held and water power created by said dam, excepting as hereinafter expressly reserved, and to the land occupied or to be occupied by the canal and race used for carrying the water from said dam to the mills and manufactories in said village of Neenah according to the recorded plat of Bassett's addition to Neenah to the width of one hundred feet each as specified in said plat."

It is the contention of defendant that an undivided two-thirds interest in the lock passed under this conveyance. The plaintiff did not succeed to any interest conveyed to Smith and Proctor. If the lock in question was conveyed by that deed, then plaintiff has no title to an undivided two-thirds interest therein. If it was not so conveyed, such interest be-

longs to the plaintiff. The trial court held that the foregoing deed conveyed the interest of the grantors in the lock and that plaintiff never acquired any title to the two-thirds interest conveyed under the deed of March 14, 1870. The map on page 429 shows the location of the dam, main channel of the river, the water power, canal, the race, and the lock.

Harvey Jones, Gilbert Jones, and Abigail Bassett were the heirs at law of Harvey Jones, Sr., and are the common grantors of all persons claiming title to the land in controversy. In 1847 (Terr. Laws 1847, p. 104) the legislature of Wisconsin empowered Harvey Jones to erect the dam in question. That act provided:

"Said dam . . . shall contain a suitable and convenient lock . . . for the passage of boats, barges and water craft; and the proprietor of said dam shall maintain said lock and shall attend the passage of all such boats, barges and water craft through said lock free of all charges to the owners thereof; and if such lock shall not be kept in repair . . . and suitably attended . . . said Harvey Jones and his associates, their heirs and assigns, being in possession of the works hereby authorized, shall pay to any person or persons who may be injured by delay all damages . . ."

The lock was completed some time after 1849, and was operated in connection with the dam from the time of its completion until 1862, when the government canal was built, which has ever since been used for the passage of boats. After the erection of the canal by the federal government the Jones lock fell into disuse, and from 1884 to 1900 it was gradually filled up.

It will be observed that the Bassett deed of September 18, 1867, conveyed (1) the dam across the south channel of the Fox river, known as the "Neenah dam," together with an easement over the land occupied by the owners of the dam for the purpose of keeping the same in repair; (2) all right, title, and interest of the grantors in and to the water held and water power created by said dam, with certain exceptions not here material; and (3) the land occupied or to be occupied by the

canal and race used for carrying water from said dam to the mills and manufactories of Neenah to the width of 100 feet, as specified in said plat.

The trial court held that the provision of this deed conveying the canal and race was broad enough to and did include the lock, because the lock was in reality a part of the canal. In opposition to this view counsel for plaintiff urge that there was no physical connection between the lock and the canal; that the canal and race were specifically named in the conveyance, and if it had been the intention to convey the lock it would have been specified; that it was only the canal and race, carrying water for power purposes and manufacturing establishments, that were conveyed by the deed; that the lock had fallen into disuse at the time the conveyance was made; and finally, that the width of the race and canal described in the conveyance was correctly stated as 100 feet, while the lock was only thirty-five feet in width. If the lock was a separate and distinct entity, completely dissociated from the canal, dam, race, and water power created thereby, at the time the conveyance of 1867 was made, the position of the plaintiff, that it was not conveyed with the canal and race, is unanswerable. The canal and race were specifically mentioned; the lock was not. Their width was set forth as being 100 feet, while the lock was but thirty-five feet wide. The only canal described was one used for carrying water for hydraulic purposes. The lock proper had never been used for any such purpose, although the upper part of the canal or channel in which it was located had been so used. If, however, the lock was actually a part of the canal, then it was conveyed. When the improvement authorized by the legislature was completed, the dam, the race, the canal, and the lock were all necessary to the development of the water power. The lock was necessary because the legislature would not permit navigation to be obstructed by a dam unless suitable provision was made for the passage of boats. It is true that in 1867 the lock had not been used for this purpose for about five years because of the

improvement made by the general government. It is also true that the lock had been maintained up to that time, and for a long time thereafter, and the state in all probability might compel its maintenance now, for that matter, or require the construction of a new one in its stead. The word "lock" does not seem to be defined by the compilers of law dictionaries and is not found in Words and Phrases. Recurring to the definition given by lexicographers we find the following:

"A barrier to confine the water of a stream or canal; an inclosure in a canal, with gates at each end, used in raising or lowering boats as they pass from one level to another." Cent. Dict.

Webster gives the same definition, and that given in the Standard Dictionary is not materially different.

The main thing here is to arrive at the intention of the grantors as expressed in the deed. A lock is almost invariably used in connection with a canal and forms part of it. It cannot exist except in connection with a canal or some equivalent situation. The words "used for carrying water," etc., found in the conveyance we are considering, do not limit the word "canal" as found therein, but are merely descriptive of the identity of the particular canal meant to be conveyed. From the situation as it appears to us the canal and race conveyed begin immediately above the dam, and the canal includes the passageway for water through the locks, as well as through what might be termed the canal proper. In other words, the artificial channels that divert the water from the river at the dam and turn it into the river below the dam constitute the canal. The rights of the parties under this deed of conveyance must be fixed as of the date upon which it was made, and the subsequent filling up of the canal could not operate to divest any title acquired under the deed of 1867.

Another consideration that confirms the view taken is the fact that the arm of the canal leading to the lock had for many years been one of the canals or races leading to a flour mill operated by water power. It is true the lock was beyond such

mill, but a portion of the canal above the headgates had been used for the dual purpose of furnishing power and serving as a channel for the passage of boats. Without the use or control of the locks the water power conveyed might be largely impaired. The gates of the lock, or at least one of them, had to be kept closed when not in use, in order to conserve the water and prevent its waste. If this lock had been more directly connected with the canal it would not be seriously claimed that it was not a part of it. Considering its utility for holding and utilizing the water for hydraulic purposes and that it. originally constituted a necessary component part of the water-power plant, absolutely requisite to its construction in the first instance and to its maintenance for some time thereafter, and the further fact that the owner of such water power might long after the year 1867 be compelled to operate such lock or else to construct and operate a new one, we conclude that the circuit court was correct in holding that a two-thirds interest in the lock passed by the conveyance of September, 1867.

The plaintiff claimed title to the remaining one-third interest in the lock under a quitclaim deed from Gilbert Jones dated March 20, 1893. The defendant contends that at this time Gilbert Jones had no interest in the lock, by reason of a. conveyance executed by him on February 19, 1881, to the defendant, which conveyed "all and singular the undivided one-third of the Neenah dam and appurtenances and dam landings and the two mill races or canals at Neenah and the water power or hydraulic power furnished by said dam, it being intended hereby to convey the entire interest in all said property which descended to said Gilbert C. Jones from Harvey Jones and which has not heretofore been sold and conveyed, . . ." with certain reservations not material. The trial court held that the Gilbert Jones interest in the lock did not pass under the deed of February 19, 1881, and that plaintiff acquired title thereto under the deed of March 20, 1893. It will be observed that the deed of 1881 conveyed a one-third

interest in the dam and appurtenances and a like interest in and to the two mill races and canals and the water power furnished by the dam. The deed then recites that it was the intention of the grantor to convey his entire interest in all of said property. The circuit court held that this conveyance did not carry a fee in the lock, but simply an easement to carry water through and to operate the same, and that when the lock was no longer used for the purpose for which it was intended it reverted to the grantor, and that plaintiff acquired title thereto from such grantor under the deed of March 20, 1893. The only material difference between the recitals in this deed and the one under which the two-thirds interest was held to be conveyed was that the 1881 deed did not specifically convey the land occupied by the race, while the other deed did. The conveyance of the canal having included the lock, it is apparent that the court overlooked the provision of the deed whereby the grantor expressed his intention "to convey the entire interest in all of said property" which he then owned. The grantor owning the land which necessarily was an essential part of the canal, such entire interest would as a matter of course include the fee and not a mere easement. Moreover, we think that a conveyance of a mill race or canal carries something more than an easement or right to use the same for water-power purposes. The bed and banks are part of the canal and should pass with the conveyance of it. *Bishop v. Seeley,* 18 Conn. 389, 394; *Schuylkill N. Co. v. Berks Co.* 11 Pa. St. 202, 203; *Genesee Valley C. R. Co. v. Slaight,* 49 Hun, 35, 1 N. Y. Supp. 554. It follows that the trial court erred in holding that the plaintiff was the owner of and was lawfully entitled to the possession of the one-third interest in the lock.

There is still a third conveyance, under which the defendant claims title to the southwesterly one-half of the lock, which was executed May 13, 1865, and ran from Gilbert C. Jones and Willard Jones to Abigail Bassett. In view of the

conclusion reached in reference to the other deeds it is unnecessary to consider this one.    The court below found that it conveyed title to the southwest boundary line of the lock and not to the center of it, and we think the trial court was right in reaching this conclusion.

The title to certain other parcels of land is in controversy in this action, but no complaint is urged as to the disposition made of such lands by the circuit court, and as to them the judgment should stand.

*By the Court.*—The judgment of the circuit court is affirmed on plaintiff's appeal, and is reversed on the appeal of the defendant, and the cause is remanded for further proceedings according to law.

KERWIN, J., took no part.