HAMLIN et al. v. PEOPLE.

(Supreme Court, Appellate Division, Fourth Department. March 5, 1913.)

1. LIMITATION OF ACTIONS (§ 44*)—AS AGAINST THE STATE—"ESCHEAT"—STATUTES—"CAUSE OF ACTION."

Under Code Civ. Proc. § 362, providing that the state will not sue with respect to title to lands unless the cause of action accrued within 40 years, limitation does not start to run at the death of a citizen owner intestate and without heirs, the escheat not being complete until office found, he being competent to transmit title, and the presumption being that he left heirs who could take, but not until the transition of the title to the state which would not be until after proceedings instituted for inquest of office; the word "escheat" having a similar significance to "reversion" and "descent," the mere transition of the title not being classed as a "cause of action."

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 220–232; Dec. Dig. § 44.*

For other definitions, see Words and Phrases, vol. 2, pp. 1015–1019; vol. 8, p. 7598; vol. 3, pp. 2463, 2464; vol. 8, p. 7653.]

2. ADVERSE POSSESSION (§ 85*)—AS AGAINST STATE—PROOF—POSSESSION.

In an action to establish title to lands against the state by limitations, plaintiffs must prove that the cause of action for the state did not accrue within 40 years, and that the people have received no rents or profits within that period, and proof must be made of an adverse, hostile, notorious, and continuous possession, limitations not starting to run until some one asserts an adverse title under Code Civ. Proc. § 362, limiting time within which the state may bring an action.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 498–503, 656, 657, 660, 668, 688–690; Dec. Dig. § 85.*]

3. RECORDS (§ 9*)—REGISTERING LAND TITLES—ALLEGATIONS IN EXAMINER'S CERTIFICATE.

An examiner's certificate that "it is my opinion" based on certain papers that "title is good as against any one but possible heirs," and that "such possible right is precluded" by Code Civ. Proc. § 362, "can be given no probative force to show adverse possession" under Real Property Law (Consol. Laws 1909, c. 50) § 385, as amended by Laws 1910, c. 627, providing that in proceedings to register title the allegations and statements of the examiner's certificate shall be prima facie evidence of the facts so alleged, unless expressly declared to be opinions or conclusions.

[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Frank Hamlin and another, executors and trustees under the will of Cicero J. Hamlin, deceased, to register title to lands. From a judgment registering such title, the People appeal. Reversed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wilber W. Chambers, Deputy Atty. Gen., for the People.
A. G. Bartholomew, of Buffalo, for respondents.

LAMBERT, J. This action is under the so-called Torrens Act, being article 12 of the Real Property Law (Consol. Laws 1909, c. 50), as amended by chapter 627 of the Laws of 1910. The plaintiffs have had judgment registering their title to the lands in question, and this appeal is from such judgment.

In 1849 one Campbell was well seised of that portion of the lands as to which question arises, and in that year he died intestate as to these lands, and without heirs surviving. Following his death, one Smith, with whom Campbell had resided and who owned another portion of the title now sought to be registered, executed a mortgage, covering the Campbell lands and his own, to a third party. This mortgage was subsequently discharged, and in 1851 proceedings were instituted in the Surrogate's Court by Campbell's executor for the leasing of the Campbell title to raise funds with which to pay the debts of Campbell's estate. Those proceedings, to which the state was not a party, resulted in a lease to Smith for the term of four years at the stipulated annual rental of $25. From the termination of this lease until his death in 1878 Smith apparently was in physical possession of these lands, but under what claim of right, or as to the character of that possession, the record is silent. Smith left a will which disposed of his entire estate, but which did not specifically identify the lands in question. His devisee asserted ownership and conveyed the lands, and it is through her that plaintiffs have acquired such record title as they possess. It is conceded that, upon Campbell's death, his title escheated to the state, except in so far as such title remained liable for Campbell's debts. The happenings of such escheat are set forth in the examiner's certificate, and conceded by plaintiffs' complaint.

[1] Plaintiffs seek to avoid the consequence of such escheat by virtue of the provision of section 362 of the Code of Civil Procedure, which provides:

"Sec. 362. The people of the state will not sue a person for or with respect to real property, or the issues or profits thereof, by reason of the right or title to the same unless either: (1) the cause of action accrued within forty years before the action is commenced, or (2) the people or those from whom they claim have received the rents and profits of the real property or of some part thereof, within the same period of time."

It is the plaintiffs' contention that the happening of the escheat was sufficient to start the limitation of this section in operation against appellant, and that, inasmuch as more than 40 years have elapsed since the escheat, the state is barred from asserting such title. To adopt this contention, it is necessary to construe the term "escheat" as within the term "cause of action" as used in the first subdivision of the section quoted. Such a construction is not legally permissible. The term "escheat" has a similar significance to the words "reversion" and "descent." It is the transition of the title to the state, and such passing of title cannot be classed as a cause of action. At common law, Campbell being a citizen, the title in the state, following the escheat, would only become effective after proceedings instituted for inquest of office.

The reason for this rule lies in the presumption that he was survived by heirs who could take and that he was capable of passing his estate by inheritance because of his citizenship. Therefore the title is said not to be complete until office found, which overcomes the presumption of heirs surviving. A different rule obtains in the case of an alien at common law. Upon the death of such the complete title passed to the state, without proceedings of any kind, and that by reason of the lack of power in the deceased to transfer his estate by inheritance. This common-law distinction is well pointed out in Hamilton v. Brown, 161 U. S. 256, 16 Sup. Ct. 585, 40 L. Ed. 691.

[2] If it be urged that this common-law doctrine remains unaffected by section 10 of article 1 of the state Constitution, adopted in 1846, regulating escheats, and is to be still applied, that does not aid the respondents. The record in this case concedes the failure of heirs of Campbell, and it is doubtful whether proceedings to establish that failure would be required in view of such concession. But, assuming that such are required, nothing stands in the way of their institution at this late date, except it be section 362 of the Code. In considering the application of that section it should be remembered that respondents are plaintiffs seeking to establish their title by proof of limitations operative against proceedings by the state. It is incumbent upon them by their proof to bring the state within every requirement of section 362. Before the state is barred from bringing its action, it must be made to appear that its cause of action did not accrue within 40 years, and that the people have received no rents or profits within that same period. Failure of proof upon the affirmative of either proposition is not sufficient. There must be proof that neither contingency has occurred. It has been held under similar circumstances that, while perhaps the strict doctrine of adverse possession is not to be applied as against the sovereign state, yet that under this section, where it is sought to establish title against the state, proof must be made of an adverse, hostile, notorious, and continuous possession in the claimant for a period of 40 years, as otherwise the presumption obtains that the state has received rents or profits or has been in possession within the 40-year period. Genesee Co. v. Slaight, 49 Hun, 35, 1 N. Y. Supp. 554; People v. Page, 39 App. Div. 110, 56 N. Y. Supp. 834, 58 N. Y. Supp. 239; Matter of Commissioners, 37 Hun, 548; People v. Page, 39 App. Div. 110, 56 N. Y. Supp. 834, 58 N. Y. Supp. 239; Fulton Co. v. State, 62 Misc. Rep. 227, 116 N. Y. Supp. 1000. Under this view, the cause of action referred to in subdivision 1 of the section must be held to arise and the statute be deemed to commence at such time as some one asserts a title adverse to that of the state, and not until then. People v. Arnold, 4 N. Y. 508, and cases supra. The record title of the plaintiffs had its inception in the deed from Smith's legatee in 1878, which falls short of making up the 40-year period specified by section 362 of the Code of Civil Procedure. It follows, therefore, that the vitality of plaintiffs' title must rest upon adverse possession not found upon a written instrument. The requirements of such an adverse holding are specified in section 372 of the Code, and we are not referred to, nor can we discover, any holdings which apply a different rule than when urged

as against an individual. In the above cited cases the same rule is applied.

It remains, then, to determine when the possession of Smith became hostile to the state, in case it ever did. Appellant invokes the aid of section 373, claiming that the possession of Smith, under the lease, not being hostile, that such lease is, by virtue of that section, deemed to have continued for an additional 20 years, during which term Smith's possession would retain its same character. If the section is to be applied, it necessarily defeats the respondents, as such extension of 20 years would continue the lease to the year 1873, less than 40 years preceding the bringing of this action. But, even if it is not, other circumstances compel the same conclusion.

[3] To complete the 40 years of adverse possession required by section 362, it is essential that such adverse holding should have commenced during Smith's lifetime and prior to 1872. As before indicated, the record discloses nothing of the character of that possession. Plaintiffs rely entirely upon the examiner's certificate. In determining the probative force of that certificate, it is necessary to consider the statute under which this action is brought, which statue, by section 385, as amended by chapter 627 of the Laws of 1910, provides as follows:

"In all proceedings subsequent to the determination by the court that the plaintiff appears to have a title that should be registered, the allegations and statements of the examiner's certificate of title and of his abstract and searches, and in the survey, shall be prima facie and presumptive evidence of the facts so alleged and stated, and if any defendant controverts any allegation or statement contained in said certificate of title, abstract or searches, or survey, the facts controverting such allegation or statement must be specifically pleaded and set forth, and except as in this section otherwise provided, must be established affirmatively by the defendant, pleading or setting forth the same. The court may require at any time, any amendment or modification of said official examiner's certificate or any further amended survey or certificate, or any additional evidence or proof that may be necessary or proper. All the allegations and statements in said certificate, abstract, searches and survey shall be taken and construed as statements of fact unless they are expressly declared therein to be conclusions or opinions. Where a party has controverted in his pleading, specifically, an allegation or statement contained in said certificate of title, abstract, searches or survey, any party who has appeared in person or by attorney or counsel at the trial may require that the ordinary rules of evidence and proof, unaffected by this section, shall apply to the matters so controverted. * * * Upon and after the issuance of the summons, the court's jurisdiction shall be the same as in an action in the Supreme Court in which no order for the commencement of the action is required; and the action shall be governed by and shall proceed according to the laws of this state and the rules of the court, relative to such an action as far as the same are not expressly abrogated or modified by this article."

The answer of the state does not expressly controvert the allegations of the complaint and of the examiner's certificate with respect to the issue of adverse possession. Upon the trial, however, it does not appear that any demand was made within the privilege granted by the section quoted or otherwise that plaintiffs adduce common law proof of the facts upon which they relied; therefore, in so far as the examiner's certificate alleges facts, those facts, under such circumstances are conclusively presumed to be true.

We find but two allegations in that certificate which tend towards the establishing of an adverse holding by Smith. Those two we quote:

"It is my opinion based on all the papers found in these proceedings, that this was regarded by the surrogate and the parties to the lease as a practical settlement of their respective claims and amounted to acquiesence in Smith's right in the property as against any one except possible heirs of Campbell."

"In my opinion the existence of such possible right is precluded by section 362, Code of Civil Procedure."

It is to be noted that neither of these statements is made as a statement of fact; on the contrary, each is expressly indicated to be an expression of opinion. Within the plain limits of the above section of the Real Property Law, these allegations by the examiner can be given no probative force whatever. Barkenthien v. People et al. (Sup.) 136 N. Y. Supp. 178.

It might also be urged with considerable force that, as applied to the facts in this case, the court had no right to try this question in this action, although the statute clearly permits such trial. The judgment in this case being binding and conclusive, its effect upon the question here presented is to divest the state of its title without a jury trial of the issue. Based upon that judgment, an action in ejectment would be a mere formality, and the state would thus be deprived of a jury determination of its right. The right to jury trial in ejectment is expressly conferred by section 968, and it matters not how the issue is raised, whether in equity or at law, that right remains. Boyd v. Boyd, 12 Misc. Rep. 119, 33 N. Y. Supp. 74, affirmed 146 N. Y. 403, 42 N. E. 542. The power of the Legislature to abrogate that right by statutory enactments would also seem to have been somewhat abridged by article 1 of section 2 of the state Constitution, which provides that the right to trial by jury shall remain inviolate forever in those cases in which it has been heretofore used.

The conclusion reached as to the failure of proof of any adverse holding by Smith renders it unnecessary to pass upon the apparent conflict in these enactments, and requires reversal of the judgment. All concur, except McLENNAN, P. J., and KRUSE, J., who dissent in memorandum by KRUSE, J.

KRUSE, J. I dissent upon the ground that the right of the state has been barred by the 40-year statute of limitations. As to the east five feet the right of action accrued upon the death of Campbell in 1849. As to the north half of the west 30 feet, the right of action accrued upon the expiration of the 4-year lease by the executor of Campbell to Smith. As to the south half of the west 30 feet, the state never acquired any interest by escheat. The premises have been in the physical occupation of Smith and his successors in title for more than 40 years under claim of title, exercising acts of ownership and dominion over the same, and, there being no evidence that the lands were vacant or unoccupied during that period of time, no presumption arises in the absence of proof to the contrary that the state has received any rents, issues, or profits from the lands within that period of time.

·People v. Rector, etc., of Trinity Church, et al., 22 N. Y. 44; Genesee Valley Canal R. R. Co. v. Slaight, 49 Hun, 35, 38, 1 N. Y. Supp. 554; People v. Van Rensselaer, 9 N. Y. 291, 328, 340, et seq.

I think the judgment should be affirmed.