HEACOCK & BERRY, Appellants, v. THE STATE OF NEW YORK, Respondent.

Prior to the passage of the act of 1870 (chap. 321, Laws of 1870), providing "for the appraisal of canal claims against the State," there was no general statute giving to the canal appraisers jurisdiction over injuries resulting from neglect, or which were temporary or occasional in their character and involved no permanent or continuous damage.

The act of 1830 (chap. 293, Laws of 1830), authorizing an appraisal where lands are overflowed by dams, etc , provided for a permanent easement, so taken that the right could be extinguished and bar a claim of future trespasses.

Conceding, therefore, that the limitation of time in which claims must be presented, contained in the Revised Statutes (1 R. S. 226, § 48), is by the language of the act of 1830 made applicable to claims presented under it (as to which *quære*), it is not applicable to claims for temporary damages presented under the act of 1870.

A temporary structure, such as a coffer dam, is not a dam within the meaning of the act of 1830.

The claimants presented a claim for damages for overflows of their premises, which they alleged were caused, among other things, by an improper construction of the banks of the Oswego canal so that water soaked through. This cause of injury was rejected by the Board of Claims on the ground that negligence in constructing the banks was not explicitly and in terms alleged. No such objection was taken on the hearing. *Held*, that it was untenable and the decision error; that the pleading, if defective, should be deemed amended.

nother alleged ground of damage was the placing of obstructions in the Oswego river which raised the level of the water and so flooded the claimants' lands. It appeared that in the work of enlarging the said canal the State erected two coffer-dams in the river. When the work of improvement was completed the ends of these dams were removed, but the structure in mid-stream was suffered to remain, assuming the character of an island. The Board of Claims held them to be dams within the meaning of the act of 1830, and so that the claim could have been presented and proved under that act and was lost by not being so presented. *Held*, error.

(Submitted March 9, 1887; decided April 19, 1887 )

APPEAL from a decision of the Board of Claims made March 14, 1885, which affirmed an award of "nothing" made by the canal appraisers upon a claim presented for damages

to the claimants' salt works, alleged to have been sustained by acts upon the part of the canal officers in the work of enlargement of the Oswego canal. The alleged acts causing injury were done in and prior to 1861. The claim was presented in 1871.

The particulars of the claim, as well as the material facts, are stated in the opinion.

*C. L. Stone* for appellants. The State was guilty of culpable negligence, such as would render an individual liable, under similar circumstances. (*Pixley* v. *Clark*, 35 N. Y. 520-524; *Bellinger* v. *N. Y. C. & H. R. R. R. Co.*, 23 id. 42; *Cott* v. *Lewiston R. R. Co.*, 36 id. 214.) There was no act prior to chapter 321 of the Laws of 1870, which empowered the appraisers, or any other tribunal, to hear and adjudicate this claim. It comes clearly within the scope of that act. (*People ex rel. Jermain* v. *Thayer*, 63 N. Y. 350.)

*Denis O'Brien*, attorney-general, for respondent. The act of the appraisers in fixing the amount of damages sustained by the owners of the land was an adjudication of all damages arising from the construction of the work which did the injury and included every species of damages arising therefrom. There is no distinction between such a case and one growing out of the taking of land. (*Whitney* v. *State*, 96 N. Y. 244.) The act of 1830 was intended to, and did furnish the measure of, and the means for, the appraisement of future as well as present damages. (*Kehn* v. *State*, 93 N. Y. 291; *Goillotel* v. *Mayor, etc.*, 87 id. 443.) What the law sanctions and authorizes, is not a nuisance, although it may cause damages to individuals and private property, and if the work authorized to be done is done carefully and properly there can be no liability for damages. (*Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 351; *Uline* v. *Same*, 101 id. 107.) The State was not bound to provide for any such improbable emergency as was presented here. (*Sheldon* v. *Sherman*, 42 N. Y. 468; *Putnam* v. *Sec. Ave. R. R. Co.*, 55 id. 108; *Loftus* v. *Union Ferry Co.*, 84 id. 460; *Bellinger* v. *N. Y. C. &*

*H. R. R. R. Co.*, 23 id. 42, 49.)    The proofs should follow the claim, which is the pleading.    (*Rome Exch Bk.* v. *Gance,* 1 Keyes, 592.)    It was the intention of the legislature that a claimant should file its claim within one year after the State had appropriated his property, or injured it by overflow, for the purposes of construction of these contemplated public works and in default thereof should "*be deemed to have surrendered to the State his interest in the premises so appropriated,*" or to have abandoned his claim to damages.    (97 N. Y. 576.)

FINCH, J.    In all our review of canal legislation we have invariably recognized the broad distinction between the claims referred to and provided for in the Revised Statutes, (Part 1, tit. 9, chap. 9, §§ 46, 48) and those covered by the act of 1870 (Chap. 321).    The former related to a permanent appropriation to the use of the State in the process of construction or improvement, and which would presumably continue while the canals existed.    The latter embraced injuries resulting from the canals or their use or management or the negligence of the officers in charge.    (*Marks* v. *The State,* 97 N. Y. 572; *People ex rel. Jermain* v. *Thayer,* 63 N. Y. 350.)    These are mainly temporary injuries and may for convenience be described as such, although it is possible that there may be included among them some injuries of a permanent character which had not been covered and provided for by the previous legislation.    The act was intended to supplement and extend the existing · jurisdiction by adding authority over new cases for which no remedy had been earlier enacted.    Under the Revised Statutes it was provided that the State should take a fee, and unless the land owner applied for compensation within one year his right should be deemed extinguished.    Under the act of 1870 no land is taken or appropriated, and the title and the right remain in the owner, and an injury to the right and damages resulting are all that are contemplated.    In the one case there was jurisdiction in the canal appraisers to hear the claim; in

the other they had no such jurisdiction until 1870. The Revised Statutes did provide for one class and one only of temporary injuries. (§ 58.) Where lands had been occupied by the canal commissioners for a temporary purpose, or to take therefrom material for repairs, the damages were to be adjusted by arbitration, and no limitation was prescribed, since if the claimant failed to name an arbitrator, the county judge was authorized to name one in his behalf. But in 1830 an act was passed evidently intended to reach a case not contemplated by either provision of the Revised Statutes. The canal commissioners were originally the officers charged with the construction of the canals, and with any extraordinary repairs or improvements on any completed canal, and for these two purposes, and these only, they were authorized to take lands, streams and waters, and build dams and aqueducts, and construct feeders. (R. S. *supra*, §§ 16, 17.) These were permanent purposes, and contemplated works essential to the construction, improvement and maintenance of the water-way, and such as would become necessary and integral parts of the canal system and so required an ownership in fee. For such acquisitions a mode of compensation existed. But there were cases where by reason of permanent dams, necessary to the operation of feeders, lands had been subjected to overflow which the State had not taken or appropriated, where it neither needed nor asserted a title in fee, but where it took only an easement in the land of the owner in the form of a right to set the water back upon him as a consequence of the constructed dam. For such cases, prior to 1830, there was no remedy provided, unless by insisting that the State should and did take a fee when only an easement was required. The overflow could not be deemed a temporary occupation of land to be adjusted by arbitration, for it was permanent and continuous, essential to the operation of the feeder and the supply of the canals, and if the fee was not taken the appraisers had no jurisdiction. To meet such cases the act of 1830 was passed. (Chap. 293.) It authorized an appraisal " when any lands are overflowed by the erection of any dam by the canal commissioners on any river or streams

connected with the public works." As we have seen the
authority of these officers in taking waters was for the perma-
nent use and supply of the canals, so that the dam and over-
flow referred to were those of a permanent and continuous
character. The damages sustained by the land *owner* were to
be appraised and the injury contemplated was one to the
realty. Since the dam and the overflow were thus continuous
and permanent, the mode of appraisal for the easement taken
was made the same as where the fee was taken   (§ 2.)   But
the only limitation expressly provided was, as to lands which
had been previously overflowed   (§ 3.)   The reference of
section 2 to the then existing laws is very general in its terms,
and both the Appraisers and the Board of Claims have held
that the clause of the Revised Statutes which extinguishes
claims not filed within the prescribed period of limitation is,
by that reference, imported into the act of 1830.   We do not
consider that, nor the effect upon the clause of a later act of
1866 ; but if the view be correct, it shows yet more clearly
that the act of 1830 referred to a permanent easement, so taken,
that the right to it could be extinguished and bar a claim of
future trespasses. Even a temporary taking of waters and a
temporary flooding of land in order to supply an occasional
deficiency of water in the canals was not deemed within the
purview of the act of 1830 ; for three years later it was pro-
vided that such damages should be settled by arbitration as in
case of the temporary occupation of land.   (Laws of 1833,
chap. 196.)   And thus we obtain a view of the general scheme
intended by the legislature. For a permanent taking either
of a fee or an easement either in lands or waters, the Appraisers
had jurisdiction to settle the damages, and for temporary occu-
pation of lands or waters to provide for repairs or incidental
deficiencies, the remedy was by the statute arbitration. This
view is in accord with an early decision of this court.
(*People ex rel. Merriam* v. *Schoonmaker*, 13 N. Y. 238.) But
in all this there was plainly no provision for occasional
and temporary damages flowing from the negligence of
the canal officers or needless injuries resulting from the man-

ner of their work, and which should have been prevented. Numerous special acts were passed to meet such supposed omissions. Land overflowed by reason of the embankment across the Montezuma marshes was neither taken nor appropriated, and neither permanently nor temporarily, but the damages involved the sufficiency of the water-way under the aqueduct, and so were specially provided for. (Laws of 1862, chap. 310.) In like manner claims were ordered heard arising from the overflowing of the Champlain canal (Laws of 1862, chap. 262) ; from flooding by oil creek reservoir (Laws of 1862, chap. 257) ; from waste-weirs and the Erie canal (Laws of 1862, chap. 377) ; from damming up by obstruction of culvert (Laws of 1862, chap. 259) ; from neglect in construction of Oswego canal enlargement (Laws of 1884, chap. 480), and from overflow as a consequence of that construction. (Laws of 1864, chap. 580.) These special acts imply that no remedy existed under the general laws in force, and they were followed by the act of 1870, which ended the special legislation by providing for all such cases. . Until that act was passed, neither the Revised Statutes, nor the law of 1830, gave to the Canal Appraisers jurisdiction over injuries resulting from neglect or which were temporary and occasional in their character and involved no permanent or continuous damage.

The claim of the present plaintiffs is of the latter character, and the board of claims erred in determining that it might have been presented under the act of 1830 and was barred and lost by reason of that omission. The claimants owned salt works lying along the Liverpool level of the Oswego canal. That level runs nearly parallel with the east shore of Onondaga lake the waters of which, through a northern outlet, discharge into the Oswego river which empties into lake Ontario. That river is further fed by the Oneida river on the east and the Seneca river on the west, which latter carries the waters of the Cayuga and Seneca lakes and of the Clyde river, and passing around a sharp curve over Jack's reefs forms a junction with the Oswego river as a final outlet.

The claimants allege three sources of injury :    First. An

insufficient culvert to carry under the canal the waters of Beartrap and Mud creeks; second, obstructions placed in the Oswego river at Gaskin's reefs and at Phenix, and the lowering of Jack's reefs, and third, raising the water of the .canal without retaining it within suitable banks so that it soaked through and destroyed the claimant's salt works. As to the first and third of these claims there can be no reasonable pretense that a remedy existed before the act of 1870, and we do not understand that they were rejected for any such reason. In so far as the determination of the first rests purely upon a question of fact and upon some evidence, the result is not subject to our review, and the merits of the claim in these respects may be left to the final adjudication to be made. The third cause of injury was quite strongly proved. In the process of the canal enlargement its depth was increased by raising its banks and correspondingly the level of its water, bu. the banks were built of loose earth and not puddled or made tight as is usually and may easily be done so that leakage resulted occasioning injury. On the face of it this was a negligent act. The object of a canal is to hold and retain water for the purpose of navigation, and banks which permit it to escape both waste the water supplied and injure the adjoining owners. The answer made to this element of the claim is neither a denial of the facts nor an assertion that it does not amount to negligence. If it was a question between individuals and the canal had been built by a private corporation the percolation resulting from leaking and illy constructed banks would easily be deemed negligence, and to such a standard the act of 1870 itself appeals. This cause of injury seems to have been rejected solely because not sufficiently pleaded. We are not satisfied with that answer. These proceedings have always been quite informal and no rigid or technical rules of pleading have been established. The criticism is that negligence in constructing the banks was not explicitly and in terms alleged. But no such objection was taken on the hearing, so far as we are able to ascertain, until the evidence had all been admitted, and since we do not

think the State was at all misled the pleading should be deemed amended or may be on the new hearing which must be ordered.

There remains the second asserted ground of liability that the State obstructed the Oswego river and by lessening the natural drainage to the north and increasing the water supply by lowering Jack's reefs raised the level of the Onondaga lake and flooded the claimant's land. The proof showed that during the process of enlarging the Oswego canal the State erected two coffer dams to exclude the water temporarily while sinking the bed of the river. These ran lengthwise of the river for quite a distance, utilizing two islands lying in the stream, and while the improvement was going on were closed at each end, the river thereby running in a narrowed channel. When the work was done the ends or wings running to the bank were removed, ut the structure in midstream was suffered to remain assuming the character of an island. The Board of Claims held these to be dams within the meaning of the act of 1830, and provable as a cause of damages before the Appraisers under that act, and because not so presented lost if not extinguished. The question was not determined upon the merits.

If we have correctly interpreted the act of 1830 it had nothing to do with such a temporary and occasional structure as is denominated a coffer-dam. Those here complained of did not extend across the river and were merely temporary obstructions. They remained only till the work was done and then existed as an island and in no just sense a dam. Their consequences were brief while serving as a coffer-dam and involved no permanent easement necessary to be acquired by the State. It was, therefore, error to reject the claim for the reason assigned, and the case must go back for a rehearing.

Nothing that we have said must be construed into an opinion on the merits or as to the ultimate result. The facts are to be considered unaffected by any supposed judgment of ours as to their force or weight. We have sought to pass only upon the questions of law involved.

The judgment should be reversed and a new hearing ordered.

All concur.

Judgment reversed.