James Donohue, Respondent, *v.* Hiram Whitney, Appellant.

Where, in an action of trespass, plaintiff shows that he entered under a deed purporting to convey a lot of land, including the *locus in quo*, and has, for more than thirty years, cleared, improved and actually occupied a part of the premises, he thereby establishes constructive possession of the whole lot described in his deed, and such a possession is sufficient to maintain the action against an intruder, or one not having a superior title, or a paramount right of possession.

In such an action it appeared that when plaintiff took possession, his grantor, with a surveyor, had gone around the premises described in his deed and located the lines and corners according to such description, and that his grantor had, at the same time, conveyed to another adjoining lands, bounding them upon plaintiff's line and corner; and shortly thereafter, the same surveyor, at the request of the grantee of the adjoining lands, had made a survey thereof and a map of both lots, which had been in the possession of such grantee for over thirty years. The surveyor was dead, but the correctness of the plotting was verified by another surveyor who had made a survey of the lands included therein. *Held*, that the map and the deed of the adjoining lands were properly received in evidence for the purpose of showing the extent of the possession and of the claim of title of plaintiff and his grantor.

A map of land not an ancient document, unless shown to be correct, or unless it is a part of or connected with some possessory act or claim of title of a party to the controversy, is not competent evidence in an action of trespass.

The provision of the Code of Civil Procedure (§ 933), authorizing the receipt in evidence of certified copies of papers filed, kept or recorded pursuant to law in a public office, does not make such a copy competent evidence, unless the original if produced would be competent.

*It seems* that to authorize a map to be received in evidence as an ancient document, it must purport upon its face to have been executed by competent authority, and it must have been found in the proper depository for such papers, or have been made or referred to as a part of the muniments of title of the party in whose favor or against whom it is offered, or where the maker is dead and the map embraces large areas of territory, that it has been so generally and publicly recognized as correct as to afford safe grounds for the presumption that lot owners, in making conveyances, had in view the boundaries and monuments indicated upon it.

(Argued March 24, 1892; decided April 19, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 5, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict and also affirmed an order denying a motion for a new trial.

This was an action for trespass.

The facts, so far as material, are stated in the opinion.

*John E. Van Etten* for appellant. The plaintiff having no deed which would cover the encroachment, it was error to allow him to introduce in evidence what is called the Wey sketch, plot or map. (*Tittering* v. *Tees*, 78 Tex. 567; *Harmer* v. *Morris*, 1 McL. 44; *U. S.* v. *Hansan*, 16 Pets. 196; *Dunraven* v. *Llewellyn*, 15 Ad. & El. 791; *Hollister* v. *Dowe*, 3 Wkly. Dig. 557.) It was also error to receive the Wey deed in evidence. (*Adams* v. *Rockwell*, 16 Wend. 285.) The plaintiff alleges no title or possession by disseizin. There can be no adverse use or possession of uninclosed, wild, mountain land by the mere cutting of timber. The plaintiff's possession is constructive, and is limited to his right under his paper title

and cannot extend beyond the bounds thereof. He has acquired no title by disseizin. (*Sparhawk* v. *Bullard*, 1 Metc. 103; *Price* v. *Brown*, 101 N. Y. 669; *Pope* v. *Hanmer*, 74 id. 240, 244; *Edwards* v. *Noyes*, 65 id. 125.) The plaintiff is bounded in express terms by the northerly bounds of the defendant derived from Livingston, which is the southerly bounds of the plaintiff. A call for the boundary line of another tract is a "natural boundary." (*Graybeal* v. *Powers*, 76 N. C. 66; *Price* v. *Brown*, 101 N. Y. 669; *Adams* v. *Rockwell*, 16 Wend. 285; *Waugh* v. *Waugh*, 28 N. Y. 94.) Where a line is given in any deed or other instrument of conveyance to be run from one landmark to another, it is a necessary inference that a straight line is to be run from one of the termini to the other, and parol evidence is not admissible to prove a different line. (2 Waterman on Trespass, 107; *Allen* v. *Kingsbury*, 16 Pick. 235, 238; *Baker* v. *Talbot*, 6 Mon. 179; *McCoy* v. *Galloway*, 3 Ohio, 382; *Nelson* v. *Hall*, 1 McLean, 519; *Wharton* v. *Brich*, 47 N. J. L. 289; *Graybeal* v. *Powers*, 76 N. C. 66.) The plaintiff, while he verbally claimed that his lot was a part of what is "laid down" as the Elmendorf tract, adjoining the Livingston tract, utterly failed to show any title in Nicholas Elmendorf, whose right the sheriff undertook to sell and convey to Russell, the plaintiff's grantor. He should, therefore, have been nonsuited. (*Price* v. *Brown*, 101 N. Y. 669; *Bank of Charleston* v. *Emerich*, 2 Sandf. 718.)

*William Lounsberry* for respondent. It was proper to admit the Wey deed in evidence. (*Donohue* v. *Case*, 61 N. Y. 631; *Brandt* v. *Ogden*, 1 Johns. 156; *Boardman* v. *Reed*, 6 Pet. 326; *Sparhawk* v. *Ballard*, 1 Metc. 98; *Morris* v. *Callanan*, 105 Mass. 129.) It was proper to show what Condrad Brodhead, the surveyor, did in reference to locating the lot. (4 Kent's Comm. 480.) The court correctly charged that the jury must find that the call of the plaintiff's deed can be answered either by a straight line terminating at the corner of the Duer lot, or by performing the angle and going down

to the corner of the Duer lot, either way that the jury think is right. (*Donohue* v. *Case*, 61 N. Y. 631 ; *White* v. *Williams*, 48 id. 354.) Copies of the Tappen and Kiersted maps were properly received in evidence. (Code Civ. Pro. § 933 ; *Enders* v. *Steenbergh*, 1 Keyes, 264.) The Court of Appeals will not reverse on a question of fact where there is conflicting evidence. (Code Civ. Pro. § 1337.)

Maynard, J. The only question litigated in this action was the true location of the plaintiff's easterly boundary line.

The premises are a part of Great Lot 8, Hardenburgh Patent, town of Shandaken, Ulster county, which has been subdivided by a line traversing it from its northerly to its southerly bounds, or from the Greene county line to Great Lot No. 7.

The lands on the east of this subdivision line are known as the Livingston tract, and on the west as the Elmendorf and Duer tracts. The defendant is in possession and claims to be the owner of about one thousand acres in the Livingston allotment, and bounded on the west by this subdivision line, and abutting on the lands of the plaintiff. It is conceded that the plaintiff cannot recover in this action, if the place where the alleged trespasses were committed is within the bounds of the Livingston tract. It is also not disputed that the northerly boundary of plaintiff's premises is for the greater portion of the distance the division line between the Elmendorf and Duer tracts. The plaintiff derived his title from William F. Russell in 1856, who at that time claimed to be the owner of seventeen hundred and eighty-seven acres of land adjoining plaintiff's lot in the Elmendorf tract and also abutting on the Livingston line. It appears that Russell derived his claim of title to the plaintiff's lot from a sheriff's sale in 1855, upon execution against Nicholas Elmendorf; but it is not shown how he obtained title, or whether he had any title to the adjacent lands. On the same day that Russell contracted to sell to plaintiff he conveyed the 1,787 acres to R. S. and T. C. Wey, by warranty deed, in which the lands granted are bounded on

the southerly side by the division line between Great Lots 7
and 8; on the easterly by the Livingston line, and on the
northerly by the plaintiff's lands.   The starting point in this
deed is on the east bank of the Esopus creek, where it inter-
sects the division line between the great lots, and running
along that line an approximate course and distance to the south-
east corner of the Livingston tract, which is described as a
heap of stones; and from thence along the Livingston line an
approximate course and distance, to a corner to be established
as the south-east corner of the plaintiff's lot.   The lands
described in the Wey deed and in plaintiff's deed comprise all
the lands in the Elmendorf tract bounded on the Livingston
line.

Plaintiff first had a contract from Russell in 1856, under
which he was entitled to immediate possession, and November
15, 1858, he received his deed.   At the time plaintiff went
into possession, Russell and Conrad Brodhead, a local surveyor
of some repute, went with him around his lot, surveying it
with a chain and compass, and locating the boundaries and
corners to which plaintiff has always claimed possession and
which would include the lands now in dispute.

In 1858 or 1859 the Wey Bros. procured Brodhead to make
a survey and map of the premises described in their deed, and
on which he made the same location of the Livingston line
and of the easterly corner and southerly boundary of plaintiff's
lot as when he made the survey at the time plaintiff took pos-
session from Russell.   Brodhead died about eleven years before
the trial.   The map was identified and shown to have been in
the possession of the Weys from the time it was made, except
when temporarily loaned, and the correctness of its plotting
was verified by a surveyor who had made a survey of the
plaintiff's lot and the Wey lot.   In other words, it was shown
to be a correct representation of the courses, distances and
monuments described in the deeds from Russell to plaintiff
and the Weys respectively.

This map, together with the Wey deed, was received in evi-
dence, under defendant's objection, for the purpose of show-

ing the extent of the possession and of the claim of title of plaintiff and his grantor, and we think that, for such purposes, they were clearly admissible. In view of the other proof that Brodhead, acting for Russell, made a survey of plaintiff's premises and established their boundaries; and that the Wey deed was cotemporaneously executed, in which their lands were bounded upon the plaintiff's and both made to have the same corner upon the Livingston line, the deed was competent evidence for the purpose of fixing the limits of the plaintiff's possession.

As the map was merely a delineation of the courses and distances in the deeds, it follows, that if shown to be correct, it could be properly used to impress upon the minds of the jury in a more intelligible form the extent and location of the lands described in plaintiff's deed. It is immaterial when or by whom it was made. It may have been plotted upon the day of the trial; but if it appeared that it was a faithful outline of the surveys contained in the deeds from Russell it would be admissible. Neither the deed nor the map in any wise concluded the defendant, but they aided plaintiff in establishing his claim of title and right of possession to the disputed territory. Having shown that he entered more than thirty years ago under a written instrument purporting to convey the *locus in quo*, and that he had cleared and improved and actually occupied a part of the premises, he had established a constructive possession to the whole lot described in his deed. Such a possession is sufficient to enable the occupant to maintain an action for trespass against an intruder, or any person not having a superior title or a paramount right of possession. (Code § 370; *Munro* v. *Merchant*, 28 N. Y. 9; *Jackson ex dem.* v. *Woodruff*, 1 Cow. 276; *Thompson* v. *Burhans*, 61 N. Y. 52; *Edwards* v. *Noyes*, 65 id. 125.)

When the plaintiff had proved these facts his case *prima facie* was complete; but the defendant could defeat the action under the pleadings in two ways, either by showing that the plaintiff's deed did not actually include the lands where the trees were cut, or that defendant had a superior right of pos-

session. There was a sharp conflict in the evidence as to the true location of the Livingston line. One of the theories of the plaintiff was that the boundary between the Livingston tract and the Duer and Elmendorf tracts was not a continuous straight line. It was claimed that there was a jog or offset at the point of intersection with the northerly boundary of the Elmendorf tract, which carried it for the rest of the way some nineteen chains farther to the east, and thus included the lands where the alleged trespasses were committed in the Elmendorf allottment. This claim seemed to be essential to the plaintiff's case as presented upon this trial, because the monuments and lot boundaries along the easterly line of the Duer tract indicated a course which, if extended straight through to the line of Great Lot Seven, would leave these lands on the easterly side of the division line and within the boundaries of the defendant's premises. To support this theory, the plaintiff put in evidence a map of that part of Great Lot 8 lying in the town of Shandaken, made by one Bushnell, a surveyor, in 1874. This map showed the offset in the line contended for and we think was improperly admitted. It was made for the use of the assessors of the town and for their convenience in making the lot assessments. The data from which it was plotted is not shown. It was the act and declaration of a party with which the defendant was not in privity, and who had no authority to bind him in the matter. It was not an ancient document, but had been recently made, and the maker of it was present at the trial. If the lines, courses, distances and monuments represented upon it had been gathered from any authentic source, which made it admissible as evidence, those facts should have been first proved. A map is at the best but a representation of lands and objects existing, or which have at a given time existed, and unless the facts outlined upon it are shown to have had an existence, or unless it is connected with or a part of some possessory act or claim of title of a party to the controversy, it is not competent evidence in an action of this character.

The respondent's counsel contends that the correctness of this

map was verified by the testimony of the surveyor Van Etten; but we are unable to assent to such a conclusion. This witness had made a survey of the lands described in the deeds of the plaintiff and the Wey Bros., and testified that from the surveys thus made the Bushnell map correctly represented the Livingston line and the corner of the Elmendorf tract. But the deeds were admissible and were admitted only for the purpose of fixing the limits of the possession of plaintiff and his grantor and the extent of their claim of title, and characterizing it; and they could not properly be made use of for the purpose of verifying the town map and making it competent proof to establish the location of the disputed line.

Before the close of the trial this map did become admissible, but only for a special or qualified purpose. Bushnell, the surveyor who made it, was examined as a witness for the defendant and gave material testimony with reference to the location of this line and of surveys recently made by him, which he claimed tended to prove that the westerly boundary of the Livingston tract was a continuous straight line from the northerly to the southerly bounds of the great lot; whereas his map made for the town, in 1874, represented it as having an offset at the point in controversy. The map then could have been properly received, if offered for the sole purpose of impeaching his credibility as a witness and affecting the weight to be given to his testimony by the jury. But it was offered and received as a part of the plaintiff's affirmative case, and without restriction as to the use which the jury might make of it. It could not have failed to have had an important bearing in their minds upon the determination of the question of the exact location of the Livingston line, and its admission was, therefore, an error, which this court cannot overlook upon appeal.

For the same reasons the Ulster county map was improperly received in evidence. Certified copies of two maps from the state comptroller's office were admitted without any other verification of their authenticity or correctness, than was made of the Bushnell map. Section 933 of the Code does not author-

ize the receipt of a certified copy of a paper filed in a public office, unless the original, if produced, is competent evidence. No proof was made which would have rendered the originals admissible, if they had been offered instead of the copies. Our attention has not been called to any statute which makes it the duty of the comptroller to cause such maps to be made and filed in his office. It was not shown when, or by whom, or for what purpose they were made, or how long they had been upon the public files. In some cases a map might be receivable in evidence as an ancient document, but it must purport upon its face to have been executed by competent authority and to have been found in the proper depository of such papers, or to have been made or referred to as a part of the muniments of title of the party in whose favor or against whom it is offered; or, where the maker is dead and it embraces large areas of territory, to have been so generally and publicly recognized to be correct as to afford safe grounds for the presumption that the lot owners in making their conveyances had in view the boundaries and monuments indicated upon it.

It is unnecessary to determine how far ancient reputation may be admissible to establish boundary lines. In any view the proper foundation was not laid for the reception of the Bushnell map, the county map and the Tappen and Kiersted maps, and they should have been excluded.

A new trial must, therefore, be ordered with costs to abide the event.

All concur.

Judgment reversed.