(42 App. Div. 350.)

VOIGHT et al. v. MEYER.

(Supreme Court, Appellate Division, Third Department. July 6, 1899.)

ADVERSE POSSESSION.

    Using premises in question as a part of a wood lot, taking therefrom wood for fuel, and using it as a sugar bush, is not "cultivating or improving," within Code Civ. Proc. §§ 371, 372, so as to sustain a claim of adverse possession.

Appeal from judgment on report of referee.

Action by Anthony Voight and others against John G. Meyer. From a judgment in favor of plaintiffs, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Wagner & Fisher, for appellant.

F. A. Taylor (Arthur More, of counsel), for respondents.

MERWIN, J. This action was brought to recover damages for trespass upon real estate. The parties' own adjoining lands, and the controversy is over the location of the dividing line. The common

source of title is Rene A. De Russey. On the 1st January, 1867, he conveyed to the plaintiffs lot No. 1 in division No. 2 in Great Lot 3, Hardenburgh patent, De Russey tract, containing 60 acres, more or less. On April 17, 1867, De Russey conveyed to Amasa Geer lot 2 in the same division, containing 60 acres, more or less. Geer, on May 17, 1867, conveyed to John Mavis, who, on July 15, 1868, conveyed to Frederick A. C. Eberline, who, on October 20, 1884, conveyed to the defendant. In the complaint it is alleged that on or about October 30, 1895, the defendant wrongfully entered upon the plaintiffs' farm and premises, the same being in the complaint described the same as above stated in the deed to plaintiffs, and cut down, took, and carried away a large quantity of wood cut from timber then growing and being on the said premises, and also cut down and destroyed about 100 maple sap trees, which was a part of the plaintiffs' sugar bush, and used by the plaintiffs as such sugar bush in connection with said farm. The answer was a general denial.

In the deeds under which the defendant holds the southerly boundary of lot No. 2 is the northerly line of lot No. 1. This line is about 120 rods long, and runs nearly east and west. At the time of the conveyances by De Russey the land was all woodland. Prior to 1895, however, the land on both sides of the line along its central portion had been cleared, but at the eastern end of the line for about 40 rods there was no clearing, and the land of either party was not inclosed. There was no division fence. For some time prior to 1895 there had been dispute as to the location of this line. Its eastern end as claimed by the plaintiffs was about six rods further north than its eastern end as claimed by the defendant. The space between these two claimed lines from the eastern line of the lots westward from 35 to 40 rods comprises the territory upon which the alleged trespasses were committed. The main issue at the trial was over the location of the division line. There had been several surveys,—one in 1859, two in 1884, and one by each party after 1895. The referee found that the line claimed by the defendant was the correct one, so that no part of the land in dispute was within the bounds of lot No. 1. He also found as matter of fact that from January, 1867, to October, 1895, the plaintiffs continuously and exclusively occupied the territory in controversy in connection with their use and occupation of lot No. 1 as their farm for procuring their fuel, and for tapping and taking sap from the maple trees thereon as a part of their sugar bush under a claim of title founded upon the De Russey deed of January 1, 1867, exclusive of any other right, and that such use and occupation was under the claim and belief that the land was part of lot No. 1. Upon these facts the referee found as matter of law that in October, 1895, the plaintiffs were the owners of the land by adverse possession, and were entitled to recover damages sustained by the acts of the defendant, and ordered judgment accordingly. The only entry alleged in the complaint is upon lands in lot No. 1, and it is not quite apparent how, under the complaint, the plaintiffs can recover damages for injuries to lands in lot No. 2. Passing, however, this question, we come to the question whether the judgment can be sustained on the theory that the plaintiffs have, by adverse possession, acquired title to the

premises in controversy. We must assume that the referee has correctly found that the line as claimed by defendant was correct. The plaintiffs cannot here dispute that. That being so, no part of the lands in dispute was included in the conveyance to plaintiffs, and the plaintiffs are not in a position to assert an adverse possession as under a claim founded upon a written instrument, within the meaning of sections 369 and 370 of the Code of Civil Procedure. Pope v. Hanmer, 74 N. Y. 240. If the claim is not under a written instrument, then, under sections 371 and 372 of the Code, it must appear that the land has been protected by a substantial inclosure, or has been usually cultivated or improved. Concededly, there was here no inclosure. Can it be said that the land has been usually cultivated or improved for the necessary period? The wood lot of the plaintiffs upon the eastern end of the farm comprised about 30 acres. Along the northerly side of this was the disputed land, being a strip five or six rods wide, containing about one acre and a half. The timber in that locality was maple, birch, basswood, and hemlock. It was shown upon the part of the plaintiffs that they had used the premises in question as a part of their wood lot, taking therefrom wood for fuel, and using the whole wood lot as a sugar bush, up to about 10 years before the trial. They had treated these premises as their own on the theory that their deed covered them. They did not claim to own any part of lot No. 2. The extent to which they had taken fuel does not appear. There was other woodland on the farm. Whether the occupation of the disputed premises was, as the referee finds, exclusive, is not so clear. There was proof that the defendant, or those under whom he claims, cut wood or timber thereon at divers times, and this proof does not seem to be fully met on the part of the plaintiffs. In 1884, Martin, a surveyor, at the request of the plaintiffs, ran out the line, and found it substantially as now claimed by the defendant. The constructive possession was in the defendant. Donohue v. Whitney, 133 N. Y. 178, 30 N. E. 848; Code, § 370.

In Doolittle v. Tice, 41 Barb. 181, 185, Judge Miller, in speaking of the provision in the Code of Procedure similar to subdivision 2 of section 372 of the present Code, says:

"Reaping, alone, can scarcely be considered as cultivating; and this was all the cultivation the land received. Nor can the keeping up a fence already made, mowing the grass and cutting brush (with no proof that it was designed to improve the land), be considered an improvement within the meaning of the statute. I think the statute was intended to provide for the ordinary cultivation and improvement of lands in the manner in which they are usually occupied, used, and enjoyed by farmers for agricultural purposes,—sowing, plowing, and manuring, and by the erection of buildings, etc., which might add to their value."

In Clark v. Phelps, 4 Cow. 203, the court, in speaking of the terms "improved or cultivated land," as used in the law as to laying out highways, says:

"These terms are to be taken in the popular sense, according to the general understanding of the community, when distinguishing what is called wild land, or land in a state of nature, from that which has been cultivated and improved. The terms to 'improve' or 'cultivate' may be considered synonymous. To cultivate is defined 'to improve the product of the earth by manual industry.' When speaking of improved land, it is generally understood to be such as has

been reclaimed, is used for the purpose of husbandry, and is cultivated as such, whether the appropriation is for tillage, meadow, or pasture."

The referee did not find that the land had been usually cultivated or improved. Nor does the evidence warrant such a finding. The land was not cleared or made fit for cultivation, nor were any improvements made thereon, within the meaning of the statute. The referee erred, we think, in his conclusion that the plaintiffs had established title by adverse possession.

Judgment reversed, referee discharged, and new trial granted; costs to abide the event. All concur.