Applying the above definition, it seems the indictment in question was not legally found because less than 16 persons were present in court at the time the indictment was presented. The indictment so found and presented has no more legal effect than if the grand jury had never returned to court.

If 15 persons can present the indictment to the court, why not 10? Why not 5? Why not 1? Why not send in the indictment by the foreman or district attorney?

It seems to me, therefore, that the presentation of the indictments to the court is a part of the business of the grand jury and of each member thereof, and, unless there be present at least 16 persons on the presentation of the indictment, it is not a valid indictment. The indictment in question was not found and presented according to law. It is therefore invalid, and must be dismissed.

An order may be entered dismissing the indictment without prejudice to a resubmission, and this case be presented to the next grand jury held in Tompkins county.

---

(68 Misc. Rep. 607.)

MILLER et al. v. STATE.

(Court of Claims of New York. June 13, 1910.)

1. EMINENT DOMAIN (§ 186*)—CANAL LAW—APPROPRIATION OF LAND.

Neither Laws 1817, c. 262, § 3, 1 Rev. St. (1st Ed.) pt. 1, c. 9, tit. 9, §§ 9–44, nor Canal Law (Laws 1894, c. 338), authorizing the appropriation of land for canals by merely taking possession thereof, required as a prerequisite either the setting of stakes or the filing of a map showing the location or extent of the appropriation.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 186.*]

2. EMINENT DOMAIN (§ 320*)—APPROPRIATION—CLAIM.

Under Canal Law (Laws 1894, c. 338), and Rev. St. pt. 1, c. 9, tit. 9, § 48, providing that, if a person whose land was taken did not claim damages within a year after the taking, he should be deemed to have surrendered to the state his interest in the premises, the state, on taking possession of land and water for canal purposes, on the expiration of a year acquired a valid title to the land and water so taken.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 320.*]

3. EMINENT DOMAIN (§ 186*)—APPROPRIATION—MAPS.

A map of a state canal filed in the Comptroller's office showed an appropriation of T. creek, and a note thereon recited that, where any stream or pond was on the same level with the waters of the creek and navigation

was conducted in such stream or pond, the stream or pond was included in the canal to the high-water mark of the stream with a berm bank on each side of 15 links, where no towing path was designated on the map. *Held*, that such provision should be construed to mean that, where no towing path was designated on the map, an appropriation of at least 15 links was made on the bank of the creek.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 186.*]

4. EMINENT DOMAIN (§ 186*)—PUBLIC RECORDS—MAPS.

Where maps showing surveys of state canals made pursuant to a public statute were filed as directed in the state comptroller's office, landowners were charged with notice thereof, though they were not filed in the office of the county clerk as also provided by law.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 186.*]

5. EMINENT DOMAIN (§ 300*)—APPROPRIATION—EVIDENCE.

Evidence *held* to require a finding that the state had previously appropriated the land in controversy for canal purposes, and that the title thereto had vested in the state free from any claims of the owners by virtue of the one year statute of limitations.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 300.*]

Claim by John B. Miller and others against the State of New York for property alleged to have been condemned for canal purposes. Claim disallowed.

N. R. Holmes, for claimants.

Edward R. O'Malley, Atty. Gen., Daniel E. Brong, A. E. Tuck, Deputies Atty. Gen., and M. H. Quirk, Asst., for the State.

RODENBECK, J. The claimants have been for many years the occupants of land in the city of North Tonawanda situate on the southeast corner of Sweeney and Main streets bounded on the south by Tonawanda creek, which creek it is claimed by the state forms a part of the Erie Canal system. There are upon the property a wagon shop, finishing shop, blacksmith shop, coal shed, lumber storehouse, small storehouse, and a wharf, some of which extend over the water of the creek in some cases 30 feet, and are supported by piles driven into the bottom of the creek. Most of the buildings on the property at the time of the appropriation had been in existence in their original condition and as improved for upwards of 40 years, and had been supported by the piles maintained for an equal length of time. The premises of which the claimants are in possession have a length on the north line according to the present appropriation of 141.7 feet, on the south line of 142.08 feet, on the east line of 56.57 feet, and on the west line of 40 feet, and, when the improvements for the Barge Canal began in this territory, the state claimed to own all of the property except a narrow strip on the north having a width on the east end of 19.62 feet and on the west end of 9.43 feet.

In order to determine the dispute as to the title to the larger portion of the property, a formal appropriation was made by the state October 27, 1908, which embraced all but the narrow strip specified, and on November 5, 1908, the claimants were notified to remove their buildings from the property, and, upon their refusal and on December 19, 1908, the buildings were torn down or removed by the state or its con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tractors·with the exception of two small buildings, which claimants removed, and for which no claim is made. This case and the other cases on Tonawanda creek tried about the same time as this case are of great importance, not only to the claimants because of the value of the land in question and the buildings thereon, but because they involve the method for proving the so-called "blue line," defining the land owned by the state and the title of the state to its canal land, not only here, but throughout the state.

When the state projected its canal system, it was thought that so important a public improvement would appeal to the patriotism of the people of the state sufficiently so that the necessary appropriations of land would be secured very largely by "cessions, grants or donations" (Laws 1816, c. 237, § 2), but this expectation was not fully realized, and the following year the Legislature provided for the acquirement by eminent domain of the land and water necessary for the canal (Laws 1817, c. 262, § 3). This statute and the later provisions of the Revised Statutes (Rev. St. pt. 1, c. 9, tit. 9, art. 2), and, indeed, all of the general statutes providing for the permanent appropriation of land for canal purposes down to the enactment of the "Canal Law" (Laws 1894, c. 338), provided merely for the entry upon the land necessary and the taking of possession thereof. There was no provision in any of the statutes prior to 1894 requiring any stakes to be set or any map to be filed as a prerequisite to the permanent appropriation of land by the state for the canal. People v. Adirondack Ry. Co., 160 N. Y. 240, 54 N. E. 689; Wheeler v. Young, 4 Wend. 647; Jerome v. Ross, 7 Johns. Ch. 315, 11 Am. Dec. 484; Rogers v. Bradshaw, 20 Johns. 735. The nearest approach to such a provision is found in Laws 1849, c. 352, which related to tracts or parcels of land divided by the construction of the canal, the provisions of which with some additional features were extended to all permanent appropriations by the canal law of 1894.

The statutes did not leave the owner of the property without a remedy where his land had been appropriated to the use of the public. His property could not be taken without compensation, and so the early statutes provided that there should be an appraisement of the damages occasioned by the acts of the canal commissioners (Laws 1817, c. 262, § 3; Rev. St. pt. 1, c. 9, tit. 9, art. 3), and the statutes further provided that, if the person whose land was taken did not make a claim for damages "within one year after such premises shall have been taken for the use of the state," he should be deemed to have "surrendered to the state his interest in the premises so appropriated" (Rev. St. pt. 1, c. 9, tit. 9, art. 3, § 48). This short statute of limitations was continued by subsequent statutes (Laws 1866, c. 836, § 5; Laws 1870, c. 321), and remained in force down to the passage of the canal law (Laws 1894, c. 338), and operated to give the state a good title to the land and water upon which it had entered and of which it had taken possession after the lapse of one year from such entry and possession (Heacock & Barry v. State, 105 N. Y. 246, 11 N. E. 638; Stewart v. State, 105 N. Y. 254, 11 N. E. 652; Benedict v. State, 120 N. Y. 228, 24 N. E. 314; Mark v. State, 97 N. Y. 572; People v. Hayden, 6 Hill, 359; Rexford v. Knight, 11 N. Y. 308).

In the case of People v. Adirondack Ry. Co., above cited, after referring to the various statutes for the construction of the original and enlarged canal relating to temporary and permanent appropriations, Judge Vann says at page 241 of 160 N. Y., at page 694 of 54 N. E.:

"All the canals of the state were built under these acts, and much property of great value was appropriated solely under their provisions. For many years the powers thus conferred were in constant exercise, and, although these statutes were often before the courts, not one was ever declared unconstitutional because of the summary method authorized in appropriating property. There was neither hearing nor notice, for the canal commissioners or their agents simply took possession of and used 'all lands, streams and waters' which they deemed necessary for the use of the canals. This completed the condemnation, except that the damages when ascertained were paid by the state. Under some of the acts, if the property owners filed their claims within one year after the appropriation, they received the amount awarded by the appraisers, and, unless they filed their claims within the period mentioned, they received nothing in the absence of special legislation."

Under this condition of the statutes, it is only necessary for the state to show where no appraisal was made of the damages that it actually took possession of the land in question for the purposes of the canal, and that the statute of limitations had run against the claim, and the possession may be established by the testimony of living witnesses and by other competent proof such as the location of stakes, maps, records, and other documentary evidence.

There is no doubt that the state appropriated the whole of Tonawanda creek for the purposes of the Erie Canal, and to that end it constructed a dam some 500 feet below the premises of the claimants which raised the water in the creek about 5 feet. It also constructed a towing path on the southerly side of the creek and appropriated a strip of the berm bank side of 15 links. These constructions and this appropriation were made some time prior to 1826, and are not only shown on the ground to some extent, but upon the maps made pursuant to statutes.

One of these is known as the "Holmes-Hutchinson Maps of 1834." They consist of a series of maps bound in book form comprising complete maps of the canal system of the state. They were made pursuant to a provision of the Revised Statutes of 1829 which authorized manuscript maps to be made of the canals of the state showing the canal land owned by the state. These maps were required to be certified and filed in the Comptroller's office, and certified copies were authorized to be filed as directed by the canal board in the clerk's offices of the various counties where the land was situated. In this instance there was no filing of the appropriate map in the clerk's office of Niagara county, but the map filed in the State Comptroller's office, approved and certified as required, shows that the whole of Tonawanda creek was appropriated as a part of the canal, that a towing path was provided on the south side of the creek, and that 15 links were appropriated on the north side. This appropriation of 15 links on the north side does not appear from the lines drawn upon the map itself, but by virtue of language in the explanatory note which forms a part of the maps. This provision reads as follows:

"Where. any stream or pond is on the same level with the waters of the creek and the navigation is conducted in such stream or pond, the stream or pond is included in the canal to the high-water mark of the stream with a berm bank on each side of fifteen links where no towing path is designated on the map."

As I interpret this language, it means that, where no towing path is designated on the map, an appropriation of at least 15 links was made, so that in the case of the claimants' property by virtue of the Holmes-Hutchinson maps there was an appropriation of 15 links on the north or berm bank of Tonawanda creek, the waters of which by virtue of the construction of the dam were on a level with the waters of the Erie Canal, and were navigated as a canal.

Claimants are presumed to have known of the filing of the Holmes-Hutchinson maps in the State Comptroller's office, since they were made pursuant to a public statute of which they had notice. The fact that a copy of the Holmes-Hutchinson maps was not filed in the Niagara county clerk's office has no significance. The provisions requiring manuscript maps to be made first appeared in the Revised Statutes. Rev. St. pt. 1, c. 9, tit. 8, art. 1, §§ 4, 5, 6, 7. It was not provided that copies of such manuscript maps should be filed in the clerk's office of the counties where the property was situated, but that "such part thereof as the canal board shall direct" should be "transmitted by the comptroller to every county intersected by the canal to which the maps shall relate." Section 6. This discretion in the canal board to direct the filing in the various clerk's offices of the maps relating to the canal land in each county remained substantially the same until the enactment of the canal law in 1894 (Laws 1894, c. 338, § 5), when the language seems to have been changed to require copies of the appropriate maps to be filed in the county clerk's offices, but the omission to file such copies in this instance did not destroy the presumption that the claimants and their predecessors in title knew of the statute requiring the maps to be made and filed in the State Comptroller's office.

The appropriation for the original canal, however, was not sufficient to include all of the property in dispute in this claim, and recourse must be had to other evidence to show that the state made a further appropriation. This evidence is found in connection with the improvement constructed by the state to obviate overflows of land on the north and south side of Tonawanda creek due to the raising of the level of the water of the creek by means of the construction of the dam. Soon after the waters of the creek had been raised, complaints were made by property owners, and in 1837, by chapter 395, the canal commissioners were directed to cause a survey and examination to be made of the land adjoining Tonawanda creek "which are flowed by water in consequence of the state dam across the mouth of the creek." In the following year a report was made by one of the state engineers to the canal commissioners recommending certain plans, in the course of which he says:

"In constructing the Erie Canal Tonawanda creek was rendered navigable and constituted a part of it by the erection of a dam near its mouth (called the state dam), and by forming a towing path along its south bank." (Assembly Documents 1838, No. 124.

The work of constructing the embankment and ditch was authorized by chapter 247 of the laws of 1838. This statute also provided that the commissioners might make such embankments and ditches as "will most effectually drain or prevent from inundation the lands now overflowed or otherwise damaged by the waters of the aforesaid creek." Progress upon the work was reported by the canal commissioners from time to time (Assembly Documents 1839, No. 86; 1840, No. 60; 1841, No. 72), and the work was reported as having been completed in 1842 (Assembly Documents 1842, vol. 2, No. 24).

In connection with this improvement, it appears satisfactory from the evidence that a map was made pursuant to statute (Rev. St. pt. 1, tit. 9, c. 9, art. 2, § 17), showing by the use of a blue line the land overflowed and by the use of a green line the land necessary to be appropriated or theretofore appropriated by the state. This map is referred to as the "Improvement Map of 1838," and is entitled "Map of the overflowed lands and lands appropriated for the improvement of Tonawanda creek and Ellicott creek." It was found in the division engineer's office at Rochester, which division embraced Tonawanda creek. The map was on file in the office and had been there as shown by the testimony of the members of the office force for more than 20 years. The map was used in constructing the improvement and in making the necessary appropriations, and was shown to be correct. This map was identified as the map used in connection with the improvement by two awards introduced in evidence which recite the exact number of acres of land overflowed and appropriated designated upon the map. This map shows a green line north of Tonawanda creek at the location of the premises of the claimant which is the northerly boundary of the embankment, and which corresponds with the northerly line of the present appropriation, and, if the green line upon this map shows the land appropriated by the state in connection with the improvement of 1838, the land in question in this proceeding belongs to the state as a part of its canal system. The map of 1838 was properly admitted in evidence. Bogardus v. Trinity Church, 4 Sandf. ch. 633; Donohue v. Whitney, 133 N. Y. 178, 30 N. E. 848. That the green line upon the map of 1838 shows correctly land appropriated by the state is shown by the testimony of living witnesses who swore that an embankment was constructed along claimant's land from 6 to 18 inches in height, and that buildings now on the property were built after the construction of the embankment, and were built on the top thereof. The embankment constructed under the statute of 1838 was quite an extensive undertaking. The embankment itself followed substantially the shore of Tonawanda creek beginning at the dam below claimants' premises, and extending eastwardly for about four miles. The ditch began at the Niagara river 2,000 feet north of the dam, and some distance easterly of the claimants' land joined the embankment, and ran parallel to it along the creek.

Further evidence of the actual appropriation of the land in dispute in connection with the improvement of 1838 is found in an award made February 13, 1843, by the canal appraisers to the then owners of the property of a two-thirds interest in a "strip of land from lots 31 and 32 taken for an embankment along the north shore of Tonawanda

creek in length 66 chains and 21 feet wide which made two acres of land." The other one-third interest lapsed and became vested in the state by virtue of the one-year statute of limitations. Rev. St. pt. 1, c. 9, tit. 9, art. 3, § 48; Laws 1866, c. 836, § 5; Laws 1870, c. 321; Mark v. State, 97 N. Y. 572; Rexford v. Knight, 11 N. Y. 308; Heacock & Barry v. State, 105 N. Y. 246, 11 N. E. 638; Stewart v. State, 105 N. Y. 254, 11 N. E. 652; Benedict v. State, 120 N. Y. 228, 24 N. E. 314; People v. Hayden, 6 Hill, 359. The width of this appropriated strip corresponds with the land appropriated in this proceeding, the proposed blue line in this proceeding being identical in location with the green line on the improvement map of 1838.

The conclusion arrived at as to the appropriation made under the improvement map of 1838 is borne out by the subsequent maps of the canal system of the state made for the western division by Evershed known as the "Evershed Maps of 1875." These maps were made pursuant to appropriations of the Legislature from year to year, and were intended to show the canal land owned by the state at that time. Laws 1864, c. 298, § 5; Assembly Documents 1867, No. 27; Laws 1868, c. 715, p. 1569; Laws 1869, c. 877, p. 2144; Laws 1870, c. 767, p. 1905; Assembly Documents 1869, No. 112; 1871, No. 3; 1872, No. 11; 1875, No. 80; 1876, No. 27. They appear not to have been approved and certified as required by the statutes to make them presumptive evidence of the title, but they are on file in the state engineer and surveyor's office, and are proof so far as they go bearing upon the state's title to its canal land. Bogardus v. Trinity Church, 4 Sand. Ch. 633; Donohue v. Whitney, 133 N. Y. 178, 30 N. E. 848. Evershed, the engineer who prepared these maps, was at one time the division engineer of this portion of the state, and must have been familiar with the situation at Tonawanda creek. In this instance these maps show a blue line along the north shore of Tonawanda creek corresponding with the green line on the map of 1838, and bearing out the contention that, by the improvement of 1838, the construction of the embankment and the award made to the then owners of the property, the state acquired a title to the strip of land along the north shore which embraced all of the land sought to be appropriated in this proceeding.

Claimants' predecessors and the claimants themselves have acknowledged certain rights of the state to the land in question. In the deeds to claimants' predecessors there are reservations of the "rights of the state of New York in the waters and shore or dyke of Tonawanda creek." This reservation occurs in various deeds, and is contained in the mortgage made by claimants to the Western Savings & Loan Association dated May 25, 1896, "excepting and reserving the rights of the state of New York in the waters and shore or dyke of Tonawanda creek." When asked upon the trial with reference to the reservation in their deed, one of the claimants said: "We knew it, but we figured it out that it would not amount to anything." The appropriation by the state in this proceeding is not a concession on the part of the state that the claimants are the owners of the land in dispute, since the appropriation appears upon its face to have been made for the purpose of securing an adjudication of the question in this court; nor could the officers authorized to make the appropriation by an act of appropri-

ation in effect surrender the title of the state to its canal land. The use of the creek by the owners of the adjacent shore for purposes of storage of logs or the placing of piles in the bed of the creek or the construction of buildings upon the canal land would not ripen into a title, since the statute would not begin to run against the land used for or in connection with the operation of the canals of the state. Genesee Valley R. R. Co. v. Slaight, 49· Hun, 35, 1 N. Y. Supp. 554. The state being the owner of the land in dispute, it was the duty of the claimants, upon receiving notice, to remove the buildings upon the property, and their failure to do so deprived them of any remedy in this appropriation proceeding for their value.

The title of the state to much of its canal land and water depends upon just such evidence as has been produced in this claim, and, if it is not to be given its full legal force, the state will lose property of great value to which it is equitably and legally entitled. The state comes into this court in the same attitude as any other suitor to be judged by the same principles of law that control in the settlement of disputes between individuals, and in its controversies with its citizens there should be no deviation from legal principles one way or the other because of its sovereignty. In the present case, were the contest one between individuals considering the statutes and decisions applicable of which the claimants are presumed to have had knowledge, it would seem to be established by a preponderance of evidence that the claimants have no legal title to the land so long profitably occupied by them. The study of the law reveals few general principles which are not subject to modifications or exceptions to meet the facts in individual cases in the interest of justice, but the award made to claimants' predecessors in title and the notice to claimants in prior conveyances of the rights of the state, which award and conveyances are on record in the clerk's office where the property is situated, would seem to make the case one where the legal principles applicable to the facts should not be strained, modified, or distinguished from their usual force and effect in order to prevent a financial loss to claimants. The arm of the state is strong, and should not be used in any case to accomplish a result unjustly harmful to any individual, but, on the other hand, the law should not be bent or warped to prevent a loss to citizens where such a course is not justified by a fair and impartial application of legal principles which should apply to all suitors alike, citizens and sovereign.

It appears, therefore, that the state in connection with the construction of the original canal and the improvement of 1838 appropriated the land in question and claimants are not entitled to recover.

SWIFT, P. J., and MURRAY, J., concur.