MEIGHAN v. ROHE et al. (No. 6861.)

(Supreme Court, Appellate Division, First Department. February 19, 1915.)

1. RECORDS (§ 9*)—TORRENS ACT—PURPOSE OF.
　　The purpose of the Torrens Land Title Registration Law (Consol. Laws, c. 50, §§ 370–434, as amended by Laws 1910, c. 627) is to register good titles, and not to cure bad ones.
　　[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

2. RECORDS (§ 9*)—TORRENS ACT—LAND ADMISSIBLE TO REGISTRATION.
　　A good title, which may be registered under the Torrens Land Title Registration Law, is a marketable one, which a court of equity would compel an unwilling purchaser to accept in an action for specific performance.
　　[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

3. RECORDS (§ 9*)—TORRENS ACT—INTEREST OF STATE.
　　It being to the interest of the state to prevent the registration of defective titles, as that would promote litigation and unrest, the Attorney General may object to the registration of a defective title under the Torrens Land Title Registration Law.
　　[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

4. ADVERSE POSSESSION (§ 58*)—ESSENTIALS OF.
　　Mere actual, open, and notorious possession for a period of over 20 years does not ripen into adverse title, for the possession must be coupled with claim of title adverse to the owner.
　　[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 279–281; Dec. Dig. § 58.*]

5. ADVERSE POSSESSION (§ 60*)—ESSENTIALS—REQUISITE.
　　Plaintiff's father went into possession of land under a document reciting that the record owner was about to travel, and that in case he should not return within 10 years plaintiff's father should be his heir and owner of his lot. Plaintiff and her father had possession of the property for over 50 years. Held that, as the father, who went into possession immediately on the departure of the owner, could not at that time have held adversely neither his possession nor that of plaintiff can be construed as adverse to the true owner.
　　[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–312, 323, 328; Dec. Dig. § 60.*]

6. APPEAL AND ERROR (§ 185*)—MATTERS REVIEWABLE.
　　Objections going to the jurisdiction may for the first time be raised upon appeal.
　　[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166–1176, 1375; Dec. Dig. § 185.*]

7. RECORDS (§ 9*)—TORRENS ACT—SERVICE.
　　Real Property Law (Consol. Laws, c. 50) § 380, as amended by Laws 1910, c. 627, § 3, provides that the official examiner's certificate of title shall state fully what search and efforts have been made to find actual or possible owners or claimants of the property sought to be registered. The record owner of property departed on travels and never returned, leaving a paper wherein he promised that, in case he did not return, plaintiff's father should be his heir. Plaintiff gave vague testimony as to efforts by her parents to discover the whereabouts of the owner. Held, that a certificate of the examiner that the owner was never heard of after his departure, though diligent efforts were made to find him, was not warranted under the statute, and did not authorize an order for substituted service; hence such service gave the court no jurisdiction.
　　[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
　　151 N.Y.S.—50

8. RECORDS (§ 9*)—REGISTRATION OF TITLE—EVIDENCE—SUFFICIENCY.

Evidence in a proceeding for the registration of title to land *held* insufficient to show that plaintiff's ancestor had advanced any of the purchase money for the land.

[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

9. RECORDS (§ 9*)—REGISTRATION OF LAND TITLE—DUTY OF EXAMINER—"PUBLIC OFFICER."

Official examiners of titles are "public officers," and, as great importance is attached by the registration law to their certificates, they should state only those facts which are clearly established.

[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*

For other definitions, see Words and Phrases, First and Second Series, Officer.]

Appeal from Special Term, Bronx County.

Action by Catherine Meighan against Lillie E. Rohe and others for the registration of land, to which the People of the State of New York objected. From a judgment for plaintiff, the People appeal. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Robert P. Beyer, of New York City, for the People.
Gilbert Ray Hawes, of New York City, for respondent Meighan.

SCOTT, J. The action is brought under article 12 of the Real Property Law, as amended by chapter 627 of the Laws of 1910 (known as the Torrens Land Title Registration Law), to register the title of plaintiff to certain real property described in the complaint, consisting of a plot about 25 feet in width, and 215 feet in depth, extending from Bergen avenue to Third Avenue, fronting on both. After a trial at Special Term the plaintiff recovered the judgment appealed from, which adjudges her to be the owner in fee simple absolute of the property in question, and grants registration thereof in accordance with the provisions of the statute.

[1-3] Exceptions were duly filed by the Attorney General of the state of New York, and he now prosecutes this appeal. The questions presented are in part technical, having to do with the proper procedure to be followed in such cases, and in part substantial, having to do with the sufficiency of plaintiff's title as exhibited by the proofs. The plaintiff challenges the right of the Attorney General to criticize or attack her claim of title, because in his answer he contented himself with putting in issue, by appropriate denials, the allegation of the complaint, without specifically pleading controverting facts tending to establish title in the people of the state of New York. This objection renders it proper that some consideration should be given to the object of the registration law, and to the proper attitude to be taken by the Attorney General in actions prosecuted thereunder.

It is well settled that the purpose of the act is to register good titles, not to cure bad ones. Partenfelder v. People, 211 N. Y. 357, 105 N. E. 675. A good title, which may be registered, we understand to be one which is marketable and free from reasonable doubt, or, in other

words, such a title as a court of equity would compel an unwilling purchaser to accept in an action for specific performance. In the nature of things, actions to register a title under the act will frequently be practically ex parte, especially in view of the somewhat loose provisions for service of process upon absent defendants and possible claimants. The people of the state of New York have an interest to see that imperfect titles are not registered, and it is not only the right, but the duty, of the Attorney General, in the protection of that interest, to insist in each case that proper proof of title be made, acting in effect as amicus curiæ. This is expressly held in Barkenthien v. People, 212 N. Y. 36–44, 105 N. E. 808, 810, wherein the court uses the following language:

"In the provision that the complaint shall state what interest, if any, the state has in the property involved in the action 'other than the general governmental interest or such as exists as to all land in private ownership,' is the recognition of the fact that there inheres in the people of the state an interest in the true, just, and conclusive registration of the titles to the lands within the state. A system or procedure which would secure or permit the registration of false, defective, or questionable titles would give rise to conflicts of ownership, litigation, or appeals for legislative relief, and be inimical to public peace and contentment and of brief existence. American Land Co. v. Zeiss, 219 U. S. 47 [31 Sup. Ct. 200, 55 L. Ed. 82]; Arndt v. Griggs, 134 U. S. 316 [10 Sup. Ct. 557, 33 L. Ed. 918]. The judgments rendered in the actions are well-nigh conclusive throughout the future as against all the world, and it is both wise and just that the people of the state in the capacity of representative or protector of parties having interests in the property should be empowered to compel the plaintiff to establish a title free from reasonable doubt."

[4, 5] In the present case the plaintiff makes no claim to a record title to that part of the premises described in the complaint which fronts on Third avenue and extends easterly therefrom about 200 feet. Her claim is that she has established a title, good against all the world, by adverse possession. The record title is in one Peter Wurm, to whom the lot was conveyed by Casper Zuern and wife by deed dated March 23, 1854, and recorded February 26, 1857. There is no record of any conveyance by Peter Wurm. There is extant, however, a paper writing, in the German language, signed by him and dated September 26, 1852, the translation of which reads as follows:

"I am about to travel, and hereby promise, in case I shall not return within four to ten years, Mr. Peter Biecker shall be my lawful heir, and owner of my lot situate at Melrose."

It will be observed that this paper antedates by about 18 months the deed by which Wurm acquired the title to the property. This fact is apparently accounted for by another paper, said to be in Wurm's handwriting, but not signed by him, which recites that he (Wurm) had already paid for the lot; that Zuern, the vendor, had not been able as yet to obtain a deed himself; and that said Zuern agrees to satisfy a mortgage on the lot within a year, and "to let me have, as legal owner of the lot bought of him, the deed of said property through the intervention of Mr. Peter Biecker of New York.". This paper is dated September 28, 1852, and is signed by Casper Zuern and his wife, Agnes, as well as by a witness.

After signing the paper above quoted, under which plaintiff claims title, Peter Wurm departed upon his travels and has not been heard from since. At some time thereafter Peter Biecker went into possession of the plot of land, improved it, built a fence around it, and he and the plaintiff, his daughter, have remained in possession thereof ever since. It is upon this possession that plaintiff rests her claim of title. That she, and her father before her, have been in actual, open, and notorious possession of the property for much more than 20 years is proven; but that fact alone is not sufficient to establish a title by adverse possession. It is necessary to show in addition that such possession was coupled with a claim of title adverse to the true owner. Of this there is no proof whatever.

The document signed by Peter Wurm in 1852 was neither a deed, nor a will, nor a contract to convey. It vested in Peter Biecker no title whatever. During the first 10 years after Peter Wurm started on his travels, Biecker certainly could not have occupied the premises under any claim of title from Wurm; and there is no evidence that at any time he asserted any claim in opposition to Wurm's title. It seems quite apparent that plaintiff's claim of a title in fee simple absolute could not prevail against Peter Wurm, if he should reappear and make claim to the property, or, in case of his death, against his heirs, if they should so appear and make claim. If Peter Wurm be dead, as from the lapse of time it may be presumed that he is, and if he left no heirs, the property has apparently escheated to the people of the state of New York; and it is very doubtful whether or not the estate of the state, created by escheat, can be defeated by any claim of adverse possession. Hamlin v. People, 155 App. Div. 680, 140 N. Y. Supp. 643.

It is not necessary, however, at the present time, to speculate as to where the title to the property in question has vested, and it is impossible, for lack of the requisite proofs, to determine that question. It is sufficient for the purposes of this appeal that the plaintiff has not shown upon the proofs that she possesses a good and marketable title —such a one as the court would compel an unwilling vendee to accept. Simis v. McElroy, 160 N. Y. 156, 54 N. E. 674, 73 Am. St. Rep. 673. Having failed to show this, she was not entitled to a judgment and decree of registration.

[6, 7] Apart from this fundamental objection to the registration of plaintiff's alleged title, there are deficiencies in the proceedings as disclosed by the papers on appeal. It was attempted to make substituted service upon Peter Wurm, and an order therefor was obtained, based in part upon the certificate of title and abstract of the official examiner, and the only evidence before the court as to the absence of Peter Wurm, his last known place of residence, and the efforts that have been made to find him were the statements contained in that certificate and abstract. Section 380 of the Real Property Law, as amended by chapter 627, Laws 1910, requires that the official examiner's certificate of title "shall state fully what search and efforts have been made to find" actual or possible owners or claimants of the property sought to be registered, not know or not found. The certificate in the present case notably fails to comply with this require-

ment. It simply states, as to Peter Wurm, that he was never heard of after his departure upon his travels, "although diligent efforts have been made to find him." The only support to be found for even this insufficient statement in the certificate is the general allegation by plaintiff, in an affidavit attached to and referred to in the certificate, that:

"She and her father and mother and other members of her family have made every effort to trace said Peter Wurm, but have been unable to locate him or find any trace of him since 1854."

It is quite apparent that the court, when it made the order for substituted service on Peter Wurm, had not before it any legally satis-factory evidence that diligent, or any, effort had been made to find Peter Wurm or his heirs. The court, therefore, in making the order that the action be commenced and that service upon Peter Wurm be made by advertisement and mailing, acted, so far as concerned said Peter Wurm, without any facts upon which such an order could be based, and the attempted service was futile to invest the court with jurisdiction to make a decree barring any claim he or his heirs might hereafter assert. Partenfelder v. People, 157 App. Div. 462, 142 N. Y. Supp. 915; 211 N. Y. 355, 105 N. E. 675. This objection, being jurisdictional, may be taken upon appeal from the final judgment. And even the order that was made does not appear to have been complied with, for we can find in the record no proof that a copy of the summons and complaint was ever mailed. Even the evidence given on the trial as to any attempts to find Peter Wurm is wholly unsatisfactory. It consisted merely of very general and vague testimony by plaintiff that in 1865 or 1866, while she was a very young girl, her parents inserted an advertisement printed in the German language and sent a letter to some one in Westphalia. Of any serious or more recent effort there was no proof whatever.

[8, 9] It may not be out of place to call attention to the wide discrepancy between the certificate of the official examiner and the testimony given on the trial. It is stated by the official examiner, relying upon an affidavit by plaintiff, that:

"Peter Wurm *borrowed part of the purchase money for said premises from her father*, and *after the conveyance to him*, and in or about the month of March, 1854, the said Wurm departed on a journey to New Orleans and Mexico, and was never heard of again, although diligent efforts have been made to locate him, and that at the time of his departure said Wurm was unmarried and had no living relatives. That before his departure the said Wurm delivered to Peter Biecker, the father of Catherine Meighan, the *said deed*, together with a letter in the German language to the effect that if he, the said Wurm, did not return from four to ten years, that then and in that event Peter Biecker, father of said Catherine Meighan, *was to be and become the owner of said premises in consideration of the money advanced by him for the purchase price and for the payment of taxes*," etc.

The official examiner states that these facts appear from an affidavit of said Catherine Meighan and from other papers in possession of and conversations had with her. The affidavit of Catherine Meighan upon which the examiner thus relies shows that she was born on February 27, 1851, and thus was less than two years old when Peter Wurm signed the paper relied upon, and less than four years old

when the deed to him appears to have been made. Her testimony as to what took place at that time, and as to whether Peter Wurm was unmarried and had no living relatives, is certainly lacking in probative force. There was no evidence produced on the trial to show that Peter Wurm borrowed any part of the consideration from Peter Biecker, and the paraphrase by the official examiner of the purport of the paper signed by Peter Wurm is wholly inaccurate and misleading.

Official examiners of titles are public officers, and great importance is attached by the registration law to their certificates and abstracts. It is their duty to state no facts regarding the sufficiency of a title carelessly, or without proof of the accuracy of the facts stated. This duty seems to have been overlooked by the examiner who certified to the title in question. No better illustration is needed of the propriety of the Attorney General's scrutiny of applications for the registration of titles than is afforded by the present case.

The judgment appealed from must be reversed, and the complaint dismissed, with costs to the appellant in this court and the court below. All concur.